PROTECTIVE NATIONAL INSURANCE COMPANY OF OMAHA v
CITY OF WOODHAVEN

Docket No. 85180. Argued January 10, 1991 (Calendar No. 11). Decided August 26, 1991.

Protective National Insurance Company of Omaha brought a declaratory action in the Wayne Circuit Court against the City of Woodhaven, alleging that the pollution exclusion of its general liability insurance policy was applicable to an underlying action brought by a third party against the city for damages sustained as an alleged result of exposure to chemical pesticide sprayed by it. The court, Michael Stacey, J., granted summary disposition for Protective National, holding that because the discharge of pesticide was intentional and part of the normal continuous services provided by the city to its residents, coverage under the policy was precluded by the pollution exclusion and that, as a matter of law, Protective National had no duty to defend or indemnify the city. The Court of Appeals, SHEPHERD, P.J., and D. E. HOLBROOK, JR., and M. D. SCHWARTZ, JJ., reversed in an unpublished opinion per curiam (Docket No. 101968). The plaintiff appeals.

In an opinion by Justice RILEY, joined by Justices BRICKLEY, BOYLE, GRIFFIN, and MALLETT, the Supreme Court *held:*

The pollution exclusion applies; Woodhaven, as a matter of law, is not entitled to coverage under the policy. Because coverage under the policy was not even possible, Protective National had no duty to defend Woodhaven.

1. Under the policy at issue, the insurer must pay for damages to which the policy applies, and must defend, under the policy, any suit against the insured claiming such damages, even if the suit is groundless, false, or fraudulent. However, the duty to defend arises only with respect to insurance afforded by the policy. Thus, if the policy does not apply, there is no duty to indemnify or defend the insured.

2. The allegations of the third party against the insured do not even arguably come within the policy coverage. Because coverage is not possible, the policy does not impose a duty on the insurer to indemnify or defend Woodhaven. The policy does not apply to damage arising out of the discharge, dispersal, release, or escape of toxic chemicals into the atmosphere unless

it is sudden and accidental. Because the release of the pesticide into the atmosphere was intentional, it was not sudden and accidental. Clearly, the type of release to which both the exclusion and the exception refer is an initial release into the atmosphere, not subsequent migration. The behavior of the pesticide in the environment after the initial release is irrelevant. Because the release of the pesticide by Woodhaven into the atmosphere was intentional, it cannot, as a matter of law, have been accidental.

3. The pollution exclusion is not ambiguous. The pesticide was a substance to which the exclusion clearly applied, and the trial court was correct in so determining. Thus coverage was excluded under the policy, and the plaintiff had no duty to defend the city.

Reversed.

Chief Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that the insurer had a duty to defend at least to the point of proving that this ordinary business operation of spraying for insects is the type of operation excluded by the pollution-exclusion clause. If the pesticide is not in the class of substances intended to be excluded by the pollution-exclusion clause, then the exclusion does not apply and there is no need to examine the sudden and accidental exception to exclusion.

Until the factfinder determines whether the pesticide satisfied the exclusion clause, the insurer has a duty to defend. The determination should depend upon an analysis of the specific facts of the case and not a general sweeping view that would allow the exclusion to encompass any substance that may be considered an irritant, contaminant, or pollutant. Courts may take judicial notice of facts that are of general knowledge or of facts that can be accurately determined by sources of unquestionable reliability. In this case it is doubtful that the toxicity of the chemical at issue can be declared generally known. A court may not take notice of what a contract phrase means.

It is crucial for some factfinder to determine whether the pesticide is the type of liquid intended by the exclusion clause. Only this determination would properly trigger the exclusion and remove the insurer's liability. While chemical by-products and industrial waste products probably were targeted by the pollution-exclusion clause, it is not clear that spraying for insects specifically was. It may be accurate to conclude that the pesticide is a toxic chemical and seen to be an irritant. Nevertheless, a determination whether it was the type of irritant intended by the parties to the contract to be excluded from coverage requires factual analysis.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.*
(by *Ronald S. Lederman* and *Thomas L. Auth, Jr.*),
for the plaintiff.

*Krall & O'Neill* (by *Martin P. Krall, Jr.*, and
*James P. O'Neill*) for the defendant.

RILEY, J. In this case, we are asked to interpret
and apply pertinent policy provisions of a compre-
hensive general liability insurance policy. The
question presented is whether the policy's pollu-
tion exclusion is applicable, thus, absolving the
insurer of any duty to indemnify or defend the
insured in the underlying action.

We find that the Court of Appeals erred in
holding that the policy's pollution exclusion argu-
ably did not apply and that therefore, the insurer
had a duty to defend the insured. Accordingly, we
reverse the decision of the Court of Appeals.

### I. FACTS AND PROCEEDINGS

On August 24, 1984, a third party brought an
action against the City of Woodhaven for damages
sustained as an alleged result of exposure to chem-
ical pesticide sprayed by Woodhaven. Woodhaven
sprayed pesticide as part of its service to control
insects and pests.

Woodhaven had a comprehensive general liabil-
ity policy with Protective National Insurance Com-
pany of Omaha. Woodhaven sought coverage un-
der the policy, claiming that Protective National
had a duty to indemnify and defend Woodhaven in
the underlying action. Protective National agreed
to defend Woodhaven, but under a reservation of
rights.

On January 6, 1986, Protective National filed a

declaratory action in the Wayne Circuit Court. Protective National contended that the policy's pollution exclusion was applicable to this case and, therefore, absolved it of any duty to indemnify or defend Woodhaven in the underlying action.

On January 13, 1987, Protective National filed a motion for summary disposition pursuant to MCR 2.116(C)(10). The court held that since the discharge of pesticide by Woodhaven was intentional and part of the normal continuous services provided by the city to its residents, coverage under the policy was precluded by the pollution exclusion. Consequently, the court found that Protective National did not, as a matter of law, have a duty to indemnify or defend Woodhaven. Therefore, on June 29, 1987, the court granted Protective National's motion for summary disposition.

On September 28, 1988, the Court of Appeals reversed the circuit court's grant of summary disposition in an unpublished opinion per curiam (Docket No. 101968). The Court held that the policy's pollution exclusion arguably did not apply and, therefore, Protective National had a duty to defend Woodhaven. The Court further held that summary disposition should be granted in favor of Woodhaven pursuant to MCR 2.116(I)(2).

Protective National filed an application for leave to appeal in this Court. We initially elected to deny leave to appeal.[1] However, on July 13, 1990, we granted reconsideration, vacated the order denying leave to appeal, and granted Protective National's application for leave to appeal. The Court further ordered that the case be consolidated with *Upjohn Co v New Hampshire Ins Co* and *Polkow v Citizens Ins Co.*[2]

---

[1] 432 Mich 929 (1989).

[2] 435 Mich 862 (1990).

II. ANALYSIS

Protective National argues that their policy does not impose upon them a duty to indemnify or defend Woodhaven in the underlying action. The policy states, under the section titled "Insuring Agreement":

> In consideration of the payment of premium, *in reliance upon the statements herein or attached hereto, and subject to all of the terms of this policy,* the Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay by reason of liability imposed by law, or liability assumed under contract, insofar as the Named Insured may legally do so, for damages because of:
>
> COVERAGE A - BODILY INJURY LIABILITY
> COVERAGE B - PROPERTY DAMAGE LIABILITY
> COVERAGE C - ERRORS OR OMISSIONS LIABILITY
> COVERAGE D - PERSONAL INJURY LIABILITY
> COVERAGE E - INDEMNIFICATION FOR CLAIMS ADMINISTRATION ERRORS AND OMISSIONS
>
> *to which this policy applies,* caused by an occurrence, during the policy period. [Emphasis added.]

The policy states, under the "Defense, Settlement, Supplementary Payments" section, that "[a]s respects such insurance *as is afforded by this policy,* the Company shall: (a) defend any suit against the Insured claiming such damages, even if such suit is groundless, false or fraudulent . . . ." (Emphasis added.)

Under this policy, the insurer will pay for damages "to which this policy applies," and the insurer will defend under the policy any suit against the insured claiming such damages even if the suit

is groundless, false, or fraudulent. However, the duty to defend arises only "[a]s respects such insurance as is afforded by this policy." Therefore, if the policy does not apply then the insurer does not have a duty to indemnify or defend the insured.

The court described an insurer's duty to defend in *Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 141-142; 301 NW2d 832 (1980), as follows:

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co,* 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch, Insurance, 2d (rev ed), § 51:45, p 538 [now § 51:49, p 489]. [Emphasis in original.]

In *Jonesville Products, Inc v Transamerica Ins Group,* 156 Mich App 508, 513; 402 NW2d 46 (1986), the Court stated that "it was the duty of [the insurer] to undertake the defense until it

could confine the claim to a recovery that the policy did not cover."[3]

We conclude that the allegations of the third party against the insured, under the facts presented in this case, do not even arguably come within the policy coverage. There is no doubt, even after looking behind the third party's allegations, whether coverage is possible. It is not. Therefore, we find that the policy did not impose upon Protective National a duty to indemnify or defend Woodhaven.

The policy is subject to several exclusions which limit the broad coverage otherwise provided under the policy.[4] The policy's pollution exclusion provides:

This policy does not apply:

* * *

I. To bodily injury or property *damage arising out of the discharge, dispersal, release or escape of* smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste material or other irritants, contaminants or pollutants *into or upon land, the atmosphere* or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental* . . . . [Emphasis added.]

The claimed damages in Woodhaven arose out of the discharge, dispersal, release, or escape of irritants, contaminants, or pollutants *into* the atmosphere. Thus, the pollution exclusion applies and, as an initial matter, precludes coverage under the

[3] Although in *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197; 476 NW2d 392 (1991), a companion case to this one, the Court rejected the definition of "sudden and accidental" as prescribed by the Michigan Court of Appeals in *Jonesville,* the Court's criticism of *Jonesville* was limited to that issue.

[4] Since it is not disputed that Woodhaven's spraying operation was an "occurrence" as defined in the policy, we do not address this issue.

policy. However, coverage may be restored if the exception to the pollution exclusion is applicable. The exception to the pollution exclusion states that "this exclusion does not apply if *such* discharge, dispersal, release or escape is sudden and accidental."[5] The lower courts and both parties agreed that the "release" of the pesticide *into the atmosphere* was intentional and therefore not "sudden and accidental." The only argument made by Woodhaven and the Court of Appeals is that it is possible that coverage exists because the exception to the pollution exclusion could possibly apply to the subsequent dispersal of the pesticide.

> [W]hile it is clear from the record that the release of the pesticide was a regular, intentional activity of defendant, it is arguable that the "dispersal" or "escape" of the pesticide to an area where it could come in contact with Ronald Vann's skin was both a sudden and an accidental event, which caused injury to Ronald Vann. Potentially, a temporal event, i.e., a sudden gust of wind, blew the pesticide into the window of the Vann's house causing the injury. [Slip op, p 4.]

This argument by Woodhaven and the Court of Appeals misapplies and misconstrues the clear language of the pollution exclusion and the exception thereto. The discharge, dispersal, release, or escape of irritants, contaminants, or pollutants to

[5] In *Upjohn v New Hampshire Ins Co,* n 3 *supra,* pp 207-208, a companion case to this one, the Court concluded that "when considered in its plain and easily understood sense, 'sudden' is defined with a 'temporal element that joins together conceptually the immediate and the unexpected.' [*United States Fidelity & Guaranty Co v*] *Star Fire Coals,* [856 F2d 31, 34 (CA 6, 1988)]. The common, everyday understanding of the term 'sudden' is ' "happening, coming, made or done quickly, without warning or unexpectedly; abrupt." ' *FL Aerospace* [*v Aetna Casualty & Surety Co,* 897 F2d 214, 219 (CA 6, 1990)]. 'Accidental' means '[o]ccurring unexpectedly and unintentionally; by chance.' *The American Heritage Dictionary: Second College Edition,* p 72."

which the pollution exclusion refers is that discharged, dispersed, released, or permitted to escape *into* the atmosphere. Likewise, the exception to the exclusion does not apply unless *such* discharge, dispersal, release, or escape *into the atmosphere* is "sudden and accidental." It is clear that the discharge, dispersal, release, or escape to which both the exclusion and the exception refer is the initial discharge, dispersal, release, or escape *into* the atmosphere and not the subsequent migration. In *Travelers Indemnity Co v Dingwell,* 414 A2d 220, 225 (Me, 1980), the Supreme Court of Maine held that "[t]he behavior of the pollutants in the environment, *after* release, is irrelevant to [the application of the pollution exclusion]." (Emphasis in original.) Similarly, in *Technicon Electronics Corp v American Home Assurance Co,* 74 NY2d 66; 544 NYS2d 531; 542 NE2d 1048 (1989), the Court of Appeals of New York upheld the finding of the Supreme Court, Appellate Division, that "the logical and proper application of the pollution exclusion depends solely upon the method by which the pollutants entered the environment . . . ." *Technicon Electronics Corp v American Home Assurance Co,* 141 AD2d 124, 144; 533 NYS2d 91 (1988). See also *Fireman's Fund Ins Cos v Ex-Cell-O Corp,* 662 F Supp 71, 75 (ED Mich, 1987) ("[a]pplication of the pollution exclusion depends exclusively upon the process by which pollutants entered the environment"). We agree.

Applying this logic to the facts of this case, we conclude that the application of the pollution exclusion depends exclusively on the discharge, dispersal, release, or escape of the pesticide into the atmosphere. The behavior of the pesticide in the environment, after this initial release, is irrelevant. Furthermore, since the release of the pesticide by Woodhaven into the atmosphere was inten-

tional, it cannot, as a matter of law, be accidental. See n 5, citing *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197; 476 NW2d 392 (1991), where this Court defined accidental as meaning "occurring unexpectedly or unintentionally, by chance." See also the opinion of the Court of Appeals of New York in *Technicon, supra,* 74 NY2d 73 ("[t]he waste discharges cannot be viewed as 'accidental' within the meaning of the exception to the pollution exclusion clause in this case where . . . the insured . . . knowingly discharged the pollutants into the waterway").

Therefore, we find that the pollution exclusion applies in this case and that Woodhaven, as a matter of law, is not entitled to coverage under the policy.

### III. RESPONSE TO DISSENT

While the dissent appears to agree with the analysis presented above, in his opinion, Chief Justice CAVANAGH argues that the majority has failed to focus on and analyze a crucial part of the pollution exclusion. The dissent believes that a determination must first be made with regard to whether the pesticide sprayed by Woodhaven is a substance to which the pollution exclusion applies. Furthermore, the dissent argues that there is no necessity for examining the sudden and accidental exception to the exclusion until there has first been a determination regarding whether the pesticide is a "pollutant." The dissent claims that since there has been no proper determination regarding whether the pesticide is a "pollutant," it is possible that it is not a "pollutant" and, therefore, the pollution exclusion arguably may not apply. This would mean coverage would arguably be possible and, thus, Protective National would have a duty to defend Woodhaven.

To be a "pollutant" under the clear language of the policy, the pesticide must be one of the following: "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste material or other irritants, contaminants or pollutants . . . ." See *ante,* p 160.

The dissent makes several arguments in support of its contention that the plain and clear language of the policy quoted above should not be applied.

First, the dissent argues that "[t]he very title of the clause is instructive, both sides in this matter refer to it as a 'pollution exclusion.' . . . It seems basic that the exclusion, therefore, should apply only to acts of pollution." *Post,* p 169.

We find the language of the policy to be better evidence of what the exclusion excepts from coverage than some term of convenience created by litigants, the judiciary, and other members of the legal community to describe the otherwise unnamed, untitled section of such policies.

In referring to the language of the policy, the so-called pollution exclusion is found under paragraph "i" of the section of the policy titled, simply, "Exclusions." The plain language of exclusion i clearly applies to "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste material *or other irritants, contaminants or pollutants . . . .*" (Emphasis added.) To hold, as the dissent would, that exclusion i should apply to exclude only acts of "pollutants" would be to ignore the other words in exclusion i. We refrain from such attempts to rewrite clear and unambiguous language under the guise of interpretation. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962).

Second, the dissent argues that

[i]f the pesticide is not in the class of substances intended to be excluded by the pollution-exclusion

clause, then the exclusion does not apply and there is no need to examine the sudden and accidental exception to the exclusion. Therefore, until the factfinder determines whether the pesticide satisfied the exclusion clause, the insurer has a duty to defend.

*   *   *

The lower court took judicial notice that Pratt 505K is a toxic chemical, but this is not a proper matter for judicial notice. [*Post,* pp 168-170.]

We refer the dissent to part of a deposition of Robert Thomas, Director of Public Service for the City of Woodhaven, which was read into the record in this case without objection from defendant-appellee Woodhaven. This evidence, present in the record, shows that the pesticide (Pratt 505K) contained directions and a caution label which read as follows:

> "Caution, harmful if inhaled, swallowed or absorbed through the skin, avoid breathing spray mist, avoid contact with skin, eyes and clothing. In case of contact wash with soap and water for eyes. Get medical attention. Wash thoroughly after using. Store away from children and domestic animals. Avoid contamination in food."

It is almost beyond comprehension how anyone would seriously argue that such a pesticide is not an "irritant, contaminant or pollutant." Similarly, on the basis of such evidence, we do not understand how anyone can seriously argue that the trial court improperly determined, for the purpose of granting Protective National's motion for summary disposition, that the pesticide was an "irritant, contaminant or pollutant" as required by the language of exclusion I in the policy. We believe the trial court was correct, under the circum-

stances, in finding that the pesticide was a substance to which the pollution exclusion applied.

The dissent also argues:

> Under the expansive interpretation of the majority, everyday business operations such as tree spraying, mosquito removal, weed control, and rodent extermination could never be covered by insurance because they would involve chemicals that are potentially "toxic" and would not involve accidental releases. I am not persuaded that this was the intent of the insurance companies in drafting the pollution-exclusion clause. [*Post,* p 173.]

First, in so arguing, Chief Justice CAVANAGH seems to be suggesting that the words "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases"[6] must be proven to fit the definition of another separate word in the exclusion—the word pollutant. Exclusion I does not read "release or escape of smoke, vapors . . . or other irritants, contaminants" *which are "pollutants."* Exclusion I simply reads "release or escape of smoke, vapors . . . or other irritants, contaminants *or pollutants* . . . ." As long as the substance is smoke, vapors, or other irritants, contaminants *or pollutants,* the exclusion applies (assuming the other language of the exclusion applies also).

Secondly, Chief Justice CAVANAGH ignores the existence of the sudden and accidental exception clause which restores coverage for such releases that are "sudden and accidental." Obviously, this argument by the dissent is misplaced and is premised on a distortion of the majority's position.

---

[6] The full and proper quotation includes liquids or gases, "waste material or other irritants, contaminants or pollutants . . . ." See *ante,* p 160.

### IV. CONCLUSION

We do not find the pollution exclusion to be ambiguous.[7] We believe that the pesticide was a substance to which the pollution exclusion clearly applied and that the trial court was correct in so determining. We find, therefore, that the exclusion applies in this case and excludes coverage under the policy.

Because coverage under the policy is not even possible, we find that Protective National did not have a duty to defend Woodhaven. We, therefore, reverse the decision of the Court of Appeals and reinstate the findings of the circuit court.

BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

CAVANAGH, C.J. (*dissenting*). The Court of Appeals in this case held that "it is arguable that the pollution exclusion clause does not apply. . . . [W]e conclude that plaintiff breached its duty to defend and that summary disposition should have been granted in favor of defendant." Unpublished opinion per curiam of the Court of Appeals, decided September 28, 1988 (Docket No. 101968), p 5. I would affirm the decision of the Court of Appeals, but for different reasons.[1]

As in *Polkow v Citizens Ins Co of America,* 438

[7] The dissent cites *Farm Family Mutual Ins Co v Bagley,* 64 AD2d 1014; 409 NYS2d 294 (1978), to support its claim that the pollution exclusion is ambiguous. However, in *Technicon, supra,* 141 AD2d 124, the same court, ten years later, declined to follow the rule of law enunciated in *Farm Family Mutual,* and held that the pollution exclusion is unambiguous. Moreover, the Court of Appeals of New York also held that the pollution exclusion is unambiguous. See *Technicon, supra,* 74 NY2d 71 ("the pollution exclusion from coverage provision in the applicable primary comprehensive general liability insurance policy is unambiguously plain and operative").

[1] See *McNair v State Hwy Dep't,* 305 Mich 181; 9 NW2d 52 (1943); *Queen Ins Co v Hammond,* 374 Mich 655; 132 NW2d 792 (1965) (when

Mich 174; 476 NW2d 382 (1991), a companion to this case, the threshold issue is whether the insurer had a duty to provide a defense to the suit. The duty to defend is broader than the duty to indemnify and arises where coverage is even arguably possible. *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1989). I am convinced that Protective National Insurance had a duty to defend at least to the point of proving that this ordinary business operation of spraying for insects is the type of operation excluded by the pollution-exclusion clause, in other words, proof that Pratt 505K, the insecticide used, is an "irritant, contaminant or pollutant" as intended by the pollution-exclusion clause.[2]

In focusing upon the "sudden and accidental" exception to the pollution-exclusion clause, rather than examining the actual pollution-exclusion clause itself, the lower court overlooked basic rules of contract interpretation and evidence. If the pesticide is not in the class of substances intended to be excluded by the pollution-exclusion clause, then the exclusion does not apply and there is no need to examine the sudden and accidental exception to the exclusion. Therefore, until the factfinder determines whether the pesticide satisfied

the trial judge reaches the right conclusion, it is upheld even if different reasons should have been assigned).

[2] The exclusion provides:

> This policy does not apply:
>
> *   *   *
>
> I. To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste material or *other irritants, contaminants or pollutants* into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental . . . . [Emphasis added.]

the exclusion clause, the insurer has a duty to defend.

For the pollution-exclusion clause to apply, the action complained of must be the type of occurrence intended by the parties to the contract.[3] The very title of the clause is instructive, both sides in this matter refer to it as a "pollution exclusion."[4] In addition, many commentators have defined the purpose of the pollution-exclusion clause as a reaction to litigation for environmentally related losses.[5] It seems basic that the exclusion, therefore, should apply only to acts of pollution. It is significant that the claims against the city do not arise out of acts of environmental pollution, but rather they relate to a personal injury allegedly suffered by one person in reaction to a normal city operation. There are no allegations of long-term exposure to the pesticide nor any allegations of environmental damage. The determination whether the exclusion applies should depend upon an analysis of the specific facts of the case, not a general sweeping view that would allow the exclusion to encompass any substance that may be considered an "irritant, contaminant or pollutant."

[3] It is not persuasive to argue that the intent of the insurance industry is not a part of the record and therefore shielded from the inquiry of this Court. Indeed, the paucity of the record and the posture of summary disposition in this case is only one more factor militating in favor of imposing a duty to defend until these proofs are admitted into a record which would allow a factfinder to establish the applicability, or inapplicability, of the pollution-exclusion clause and its exception as they relate to the facts of this case.

[4] Each of the cases cited by the majority deal with substances determined to be a "pollutant." *Ante,* p 162. This comports with the statement of the appellant that "[t]he exclusion unambiguously excludes from coverage liability based on all intentional discharges of *pollutants* . . . ." (Emphasis added.)

[5] See, e.g., Burke, *Pollution exclusion clauses: The agony, the ecstacy, and the irony for insurance companies,* 17 N Ky L R 443, 450 (1990); note, *The pollution exclusion clause through the looking glass,* 74 Geo L J 1237, 1251, n 73 (1986), and 2 Long, Law of Liability Ins, § 10A.04[2], p 10A-48.

See *Westchester Fire Ins Co v Pittsburg, Kansas,* 768 F Supp 1463 (D Kan, 1991) (pesticide is not intended to be excluded); *United States Fidelity & Guaranty Co v Armstrong,* 479 So 2d 1164 (Ala, 1985) (overflow of sewage is not the type of pollution encompassed); *Sellers v Seligman,* 463 So 2d 697 (La App, 1985) (a genuine issue existed whether the inhalation of silica dust was encompassed by the pollution-exclusion clause); *A-1 Sandblasting & Steamcleaning Co, Inc v Baiden,* 53 Or App 890; 632 P2d 1377 (1981) (a genuine issue existed whether paint that was oversprayed was a liquid under the pollution-exclusion clause); *Molton, Allen & Williams, Inc v St Paul Fire & Marine Ins Co,* 347 So 2d 95 (Ala, 1977) (sand and dirt from a construction site was not included by the clause). Cf. *Barmet of Indiana, Inc v Security Ins Group,* 425 NE2d 201 (Ind, 1981) (the regular emissions of gas that obscured visibility and caused an automobile accident was excluded).

The lower court took judicial notice that Pratt 505K is a toxic chemical, but this is not a proper matter for judicial notice. MRE 201(b) states:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Courts can take judicial notice when the fact so noticed is one of general knowledge.[6] In this case,

---

[6] See, e.g., *Kreski v Modern Wholesale Electric Supply Co,* 429 Mich 347; 415 NW2d 178 (1987) (it is common knowledge that burning buildings collapse); *Firemen's Ins Co v Sterling Coal Co,* 348 Mich 564; 83 NW2d 319 (1957) (the explosive character of dynamite is a matter of general knowledge); *Weever v Weiandt,* 321 Mich 585; 32 NW2d 897 (1948) (ordinary trucks can, and often do, travel as fast as thirty-two or more miles per hour).

it is very doubtful that the toxicity of Pratt 505K can be declared "generally known." In fact, most persons would not even know what it is, and certainly would be unable to determine its chemical composition. It is also acceptable for the court to take judicial notice of facts that can be accurately determined by sources of unquestionable reliability, for example, statistics. See *Fortner v Koch,* 272 Mich 273; 261 NW 762 (1935) (the court took judicial notice that Detroit had more than one million inhabitants). But more significantly, courts cannot take judicial notice of what a contract phrase means. *Moore v Mitchell,* 278 Mich 10, 18; 270 NW 197 (1936) (the court cannot take judicial notice of what constitutes an " 'over the counter transaction' " in the brokerage business). The fact that was judicially noticed in this case, that the pesticide is a toxic chemical, does not qualify as a statistic and it is part of a contract clause, i.e., the pollution-exclusion clause. Therefore, this was not a proper fact for judicial notice. While recognizing that the defendant was contesting the judicial notice, the Court of Appeals did not address the issue because it recognized that the "*plaintiff concedes* that this was irrelevant to the issue of whether the pollution exclusion clause applies . . . ." (Emphasis added.) The plaintiff appeared to be conceding that it is not necessary to show that Pratt 505K is toxic, perhaps because the spray is a "liquid" and thereby included in the exclusion.[7] The defendants were not prejudiced by the judicial notice because, even though the judi-

---

[7] The appellant declared that "[e]ven if the chemicals at issue . . . were as harmless as milk or sugar, that would not invalidate [the trial court's] decision." This argument ignores the requirement that the substance be an "irritant, contaminant or pollutant."

In the brief filed before this Court, however, the plaintiff seems to retreat from this position and assume that the pesticide is unquestionably a "pollutant." The summary argument was stated, in part, as follows: "[T]he pollution exclusion [clause] was not . . . triggered by

cially noticed fact caused coverage to be excluded by the pollution-exclusion clause, coverage was in effect reinstated by the "sudden and accidental" exception. The defendants, therefore, were still allowed to recover. Since the majority of this Court reverses that determination under the "sudden and accidental" exception, and prevents the defendants from recovering, it is crucial for some factfinder to determine whether the pesticide is the type of "liquid" intended by the exclusion clause. Only this determination would properly trigger the exclusion and remove the insurer's liability.

It is axiomatic that contract interpretation must take into account the intention of the parties. The pollution-exclusion clause was likely intended to prevent the ongoing, intentional pollution that occurs from industrial wastes, i.e., when companies dump *wastes* into the environment. It should not necessarily operate to disallow coverage for all pesticide spraying. While chemical by-products and industrial waste products probably were targeted by the pollution-exclusion clause, it is in no way clear that an ordinary function such as spraying for insects was specifically targeted by the clause. One court, in construing the pollution-exclusion clause demonstrated how such a broad interpretation can lead to absurd results:

"If a child at a city pool complains about the chlorine in his or her eyes, the causative factor is a chemical but the city has not polluted the environment. If a fire hydrant sprays water on a passer-by, that water may be an 'irritant' to the person, but again the municipality responsible for

the method of the *pollutants'* migration . . . . The focus of the exception is on liability arising out of the 'discharge, release, dispersal or escape' of *pollutants* 'into or upon' the atmosphere or environment." (Emphasis added.)

the fire hydrant has not polluted the environment." [*Westchester Fire Ins Co v Pittsburg, supra* at 1470.]

If the passer-by in the above example was injured by the water, the insurer should not be heard to claim that coverage is excluded by the pollution-exclusion clause. It may be accurate to conclude that the pesticide is a "toxic chemical,"[8] and, viewed in the abstract, the pesticide can be seen as an "irritant." Nevertheless, a determination whether it was the type of irritant, intended by the parties to the contract, to be excluded from coverage requires factual analysis. Under the expansive interpretation of the majority, everyday business operations such as tree spraying, mosquito removal, weed control, and rodent extermination could never be covered by insurance because they would involve chemicals that are potentially "toxic" and would not involve accidental releases. I am not persuaded that this was the intent of the insurance companies in drafting the pollution-exclusion clause.

LEVIN, J., concurred with CAVANAGH, C.J.

[8] It is important to note, however, that it was not proven to be toxic to humans and the president of Miller Chemical testified that Pratt 505K had been cleared for use by United States Environmental Protection Agency. Furthermore, Pratt 505K is not classified by the Michigan Department of Agriculture as a restricted pesticide requiring special precautions. See affidavit of Robert Mescher, Pesticide Registration Specialist for Michigan Department of Agriculture.