661 So.2d 1218 (1995)
LIBERTY MUTUAL INSURANCE COMPANY, et al., Appellants,
v.
LONE STAR INDUSTRIES, INC., Appellee.
No. 90-2498.
District Court of Appeal of Florida, Third District.
September 13, 1995.
Rehearing Denied November 15, 1995.
Akerman, Senterfitt & Eidson, and Steven E.M. Hartz and Mark S. Shapiro, Miami; Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, and Martha J. Koster and Lee H. Glickenhaus, Boston, MA, for appellants.
Keith Mack Lewis Cohen & Lumpkin, and R. Hugh Lumpkin and Sarah B. Clasby, Miami; Anderson, Kill, Olick & Oshinsky, and Eugene R. Anderson and Edward Tessler, New York City, for appellee.
Before HUBBART, GERSTEN and GODERICH, JJ.
*1219 PER CURIAM.
In Liberty Mutual Insurance Co. v. Lone Star Industries, Inc., 17 Fla. L. Weekly D2215 (Fla. 3d DCA Sept. 22, 1992), decision quashed by, 648 So.2d 114 (Fla. 1994), the defendant, Liberty Mutual Insurance Co. [Liberty Mutual], appealed from a non-final order granting the plaintiff's, Lone Star Industries, Inc. [Lone Star], motion for partial summary judgment and ruling that Liberty Mutual was obligated to defend its policyholder, Lone Star. This court affirmed the lower court's order granting partial summary judgment and relied on the Florida Supreme Court's decision in Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Corp., 636 So.2d 700 (Fla.) [Dimmitt I], reversed on rehearing, 636 So.2d 700 (Fla. 1993), that found the term "sudden and accidental," as contained in the pollution exclusion clause, to be ambiguous as a matter of law. Liberty Mut. Ins. Co. v. Lone Star Indus., Inc., 17 Fla. L. Weekly D2215 (Fla. 3d DCA Sept. 22, 1992), decision quashed by, 648 So.2d 114 (Fla. 1994). Subsequently, the Florida Supreme Court, on rehearing, reversed its position in Dimmitt I and held that the term "sudden and accidental" was unambiguous. Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700 (Fla.) [Dimmitt II], reversing 636 So.2d 700 (Fla. 1993). Consequently, the Florida Supreme Court quashed this court's decision and remanded this case for "resolution of such other issues as may be involved." Liberty Mut. Ins. Co. v. Lone Star Indus., Inc., 648 So.2d 114 (Fla. 1994), quashing 17 Fla. L. Weekly D2215 (Fla. 3d DCA Sept. 22, 1992). Therefore, on remand, we reconsider this case in light of Dimmitt II.
From 1972 until the early 1980's, Lone Star operated a wood-treating facility in Dade County, Florida, on land that was leased from Seaboard Systems Railroad, Inc. From 1972 until the present, Liberty Mutual issued comprehensive general liability insurance to Lone Star. These policies contained a pollution exclusion clause that provided:
It is agreed that the insurance does not apply to any liability arising out of the pollution or contamination due to discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion shall not apply if such discharge, dispersal, release or escape is sudden and accidental or results from an underground seepage of which the insured is unaware.

(emphasis added).
In May 1983, the Dade County Department of Environmental Resources Management [DERM] filed a complaint against Lone Star alleging the discharge of contaminants into the waters of Dade County. Lone Star forwarded the complaint to Liberty Mutual. Liberty Mutual initially appeared and defended Lone Star, but eventually withdrew its defense. Liberty Mutual explained that its decision to withdraw its defense was based upon three factors: 1) its investigation; 2) the deposition of Lone Star's assistant plant manager wherein he testified that the pollution in question occurred as a result of Lone Star's regular business operations over a period of many years; and 3) this court's opinion in Seaboard System Railroad v. Clemente, 467 So.2d 348 (Fla. 3d DCA 1985).
In July 1983, the Florida Department of Environmental Regulation [DER] filed a second action against Lone Star for violating state groundwater regulations by allowing contamination to occur during the regular operations of the plant and for failing to obtain several permits. Also, in July 1983, Futura Realty Inc. [Futura] filed a third action against Lone Star for contribution and indemnity alleging that Lone Star stored chemicals that were discharged onto the property. In October 1983, all three state court actions were consolidated into a single action. In November 1983, Davidson, a defendant in the DERM and Futura actions, filed a complaint in federal court against Lone Star and the other defendants in the DERM and Futura actions seeking a declaration of the parties' respective rights and obligations, contribution, and indemnity. [Collectively all four actions pending against Lone Star will be referred to as the "Miami Woods Actions."]
*1220 In February 1987, Lone Star filed a complaint against Liberty Mutual. Lone Star alleged that Liberty Mutual had breached its obligations under the insurance policies by failing to investigate and defend Lone Star in the Miami Woods Actions. Liberty Mutual denied any duty to defend Lone Star and filed a motion for summary judgment arguing that summary judgment was proper because the pollution exclusion clause barred any duty to defend. The trial court summarily denied this motion. Then, Lone Star filed a motion for partial summary judgment on the issue of Liberty Mutual's duty to defend. The trial court granted Lone Star's motion for partial summary judgment finding that Liberty Mutual had a duty to defend Lone Star. Liberty Mutual appeals from this non-final order.
Liberty Mutual contends that the trial court erred by granting Lone Star's motion for partial summary judgment and finding that Liberty Mutual was obligated to defend Lone Star. We agree for several reasons.
First, in Dimmitt II, the Florida Supreme Court concluded that the term "sudden and accidental," as used in the exception to the pollution exclusion clause, is unambiguous as a matter of law. Dimmitt II, 636 So.2d at 704-705. Further, the court interpreted the term "sudden and accidental" to mean abrupt and unexpected. Dimmitt II, 636 So.2d at 704.
Here, the contamination cannot reasonably be construed as "sudden and accidental." The complaints alleged, and Liberty Mutual's subsequent investigation revealed, that gradually over a period of several years, there was an expected and intentional release of contaminants during the normal course of Lone Star's business operations. The release of contaminants was neither abrupt nor unexpected, and the contamination falls squarely within the pollution exclusion clause of the policy, not the exception. Therefore, Liberty Mutual has no duty to defend Lone Star under the "sudden and accidental" exception to the pollution exclusion clause.
Second, Liberty Mutual has no duty to defend Lone Star under the underground seepage exception to the pollution exclusion clause because the discharge must "result from" an underground seepage of which the insured is unaware. "[T]he discharge, dispersal, release, or escape to which both the exclusion and the exception refer is the initial discharge, dispersal, release, or escape into the atmosphere and not the subsequent migration." Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven, 438 Mich. 154, 476 N.W.2d 374, 377 (1991) (emphasis added). In fact, "[t]he behavior of the pollutants, after release, is irrelevant to [the application of the pollution exclusion]." Traveler's Indem. Co. v. Dingwell, 414 A.2d 220, 225 (Me. 1980). Further, application of the pollution exclusion depends solely upon the process or method by which the pollutants enter the environment. Fireman's Fund Ins. Co. v. Ex-Cell-O, 662 F. Supp. 71, 75 (E.D.Mich. 1987).
In this case, the complaints clearly allege, and Liberty Mutual's investigation confirmed, that the release of contaminants occurred above the ground from the dripping of chemicals from the treated wood onto the soil, from the leaking of chemical storage containers, and from the overflowing of chemical collection pits. The underground seepage exception to the pollution exclusion clause is inapplicable because the initial discharge, dispersal, release, or escape of pollutants did not occur underground; rather, it occurred above the ground and subsequently migrated underground. Additionally, Lone Star was aware of the release of the contaminants contrary to the lack of knowledge requirement in the underground seepage exception. Therefore, Liberty Mutual has no duty to defend Lone Star under the underground seepage exception to the pollution exclusion clause.
Lastly, an insurer has no duty to defend a suit against an insured where the complaint upon its face alleges a state of facts that fails to bring the case within the coverage of the policy. Capoferri v. Allstate Ins. Co., 322 So.2d 625, 627 (Fla. 3d DCA 1975). Further, the initial entry of an appearance by the insurer's attorneys for the insured does not in and of itself constitute a waiver of a defense to it under the policy it has issued. Capoferri, 322 So.2d at 627.
*1221 In the instant case, the only cause of action alleged in the complaints is that, over a period of several years, Lone Star knowingly and continuously released above-ground pollutants that caused contamination to the soil and the groundwater. This contamination was neither "sudden and accidental" nor due to underground seepage of which the insured was unaware. Additionally, even though Liberty Mutual began an investigation into the allegations in the complaints and initially appeared and defended Lone Star, this did not constitute a waiver of its defense. Therefore, because the complaints did not allege a cause of action that fell within the coverage of the policy and because Liberty Mutual did not waive its defense, Liberty Mutual does not have a duty to defend Lone Star.
Based on the foregoing reasons, we reverse the trial court's non-final order granting partial summary judgment and finding that Liberty Mutual has a duty to defend Lone Star.
Reversed.