KELLY, J.
(dissenting). The majority has decided that plaintiff Citizens Insurance Company had no duty to defend defendant Pro-Seal Service Group, Inc., in the underlying trademark infringement action. It asserts that the complaint did not allege an advertising injury as that term is defined by the parties’ commercial general liability policy (CGL policy). I believe that the complaint alleges one of the advertising injury offenses covered by the policy and the injury complained of does not fall within an enumerated exception to coverage. As a consequence, I respectfully dissent. I would affirm the judgment of the Court of Appeals.
THE UNDERLYING FACTS
Defendant Pro-Seal is in the business of selling and repairing mechanical seals used in high-temperature and extreme-pressure environments. It is not a manufacturer of these seals but a distributor that sells mechanical seal products manufactured by others and performs repairs on seals, using its own employees.
In the underlying action, a customer of Pro-Seal requested that Pro-Seal make repairs and modifications to mechanical seals that the customer had purchased from defendants Flowserve Corporation and Flowserve *92 Management Company (Flowserve). Flowserve is a large manufacturer of mechanical seals that also operates a repair business for its seals. Flowserve and Pro-Seal are competitors in the Alaskan market in both the sale of new seals and in the repair of worn seals.
Pro-Seal repaired two Flowserve mechanical seals and shipped them to Alaska Roteq Corporation, an Alaskan distribution center engaged in the distribution and sale of mechanical seals, for delivery to Pro-Seal’s client. The seals were shipped in a distinctive Flowserve reusable container. Pro-Seal’s name appeared on the outside with a prominent red label that displayed the location of and contact information for Pro-Seal, a product description, and testing information. The exterior packaging also displayed the Flowserve trademark.
An employee of Flowserve observed the packaging while it sat in the open on the premises of Roteq. The Flowserve employee knew that the product inside had been repaired by Pro-Seal because the affixed label displayed Pro-Seal’s name. Flowserve intercepted the repaired seal and the box in which it was contained.
Four months after the incident, Flowserve filed a complaint against Pro-Seal in the United States District Court in Alaska. It alleged, among other things, that Pro-Seal created confusion in the marketplace by (1) imitating or infringing trademarks and product marks, (2) by using trade secrets, blueprints, engineering drawings, and packaging materials, and (3) by engaging in sales-related conduct, all of which misrepresented Pro-Seal’s products as being Flowserve products in violation of Flowserve product trademarks, trade names, and the Lanham Act. 15 USC 1125(a). The complaint asserted that Pro-Seal unfairly competed with Flowserve through these devices and misrepresented to particular *93 customers and the public that Pro-Seal’s products and services were Flowserve products and services.
Pro-Seal notified its insurer, Citizens Insurance Company, of the lawsuit and requested that it provide a defense. Citizens Insurance declined and filed this lawsuit seeking a declaration that it had neither a duty to defend nor an obligation to indemnify. Both parties moved for summary disposition. The trial court went directly to an exclusion in the CGL policy. It pertains to injuries caused by acts of the insured done with knowledge that an injury to another will occur. It decided that the exclusion applied and, as a result, that Citizens Insurance had no duty to defend.
Pro-Seal appealed to the Court of Appeals, which, in a published opinion, vacated the trial court’s order. The appellate court determined that the advertising injury coverage under the CGL policy required Citizens Insurance to defend the underlying action. It reasoned that the substance of the complaint relied on the doctrine of “trade dress,” a theory on which recovery could be based. The claimed injury, the appeals court held, arguably fell within the definition of an advertising injury. It ruled that the CGL policy exclusion did not apply because the complaint alleged both intentional and nonintentional acts. Flowserve, it held, could have recovered without proving that any relevant act was committed intentionally.
STANDARD OF REVIEW
This Court reviews de novo the interpretation given to language in an insurance contract. Klapp v United Ins Group Agency, Inc, 468 Mich 459, 463; 663 NW2d 447 (2003). An insurance company’s duty to defend its insured depends on the allegations the third party makes in the underlying complaint against the insured. *94 Illinois Employers Ins of Wausau v Dragovich, 139 Mich App 502, 506; 362 NW2d 767 (1984). If the allegations fall even arguably within the coverage of the policy, the insurer has a duty to defend. American Bumper & Mfg Co v Hartford Fire Ins Co, 452 Mich 440, 450-451; 550 NW2d 475 (1996). Where there is doubt about whether the complaint alleges a liability of the insurer under the policy, the doubt must be resolved in favor of the insured. Polkow v Citizens Ins Co, 438 Mich 174, 180; 476 NW2d 382 (1991).
ADVERTISING INJURY
The issue in this case is whether Citizens Insurance had a duty to defend under the CGL policy. In resolving this issue, the Court must construe the terms of the policy. A court will not hold an insurance company liable for a risk that it did not assume. Henderson v State Farm Fire & Cas Co, 460 Mich 348, 354; 596 NW2d 190 (1999).
The policy provides in § 1(a) that Citizens Insurance “will pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury.” In relevant part, “advertising injury” is defined in § V, paragraph 14:
“Personal and advertising injury” means injury,... arising out of one or more of the following offenses:
(g) Infringing upon another’s copyright, trade dress, or slogan in your “advertisement.”
In order to qualify as an advertising injury under this subsection, two requirements must be satisfied: Pro-Seal must have infringed Flowserve’s copyright, trade *95 dress, or slogan, and the infringement must have occurred in Pro-Seal’s “advertisement.”
Flowserve alleged that Pro-Seal used Flowserve’s trademark and represented Flowserve products to be its own, and sent a seal that it had repaired to a customer in distinctive Flowserve packaging. The “trade dress” of a product refers to the product’s overall image and may include features such as a particular sales technique. Two Pesos, Inc v Taco Cabana, Inc, 505 US 763, 764; 112 S Ct 2753; 120 L Ed 2d 615 (1992). It is a broad term that is expansive enough to include Flowserve’s allegations, even though Flowserve never used the term “trade dress.” Thus, considering the substance of the claim, contrasted with the language of the complaint, as this Court must do, the complaint alleged that Pro-Seal infringed Flowserve’s trade dress. See American Bumper, 452 Mich 451-452.
The injury must also arise out of an “advertisement” in order to qualify as an advertising injury. As defined by the CGL policy, an “advertisement” takes place when the following four elements are satisfied: (1) a notice about the company’s goods, products, or services, (2) is broadcast or published, (3) to the general public or specific market segments, (4) for the purpose of attracting customers.[1]
The first requirement is that there be notice about the company’s goods, products, or services. The majority opinion defines “notice” as including “ ‘a written or printed statement conveying.. . information ....’” Ante at 85 (citation omitted.) In this case, Pro-Seal shipped a package containing a label displaying its *96 name as well as product information. This satisfied the notice requirement under the majority’s definition.
The next inquiry concerns whether the notice was broadcast or published. As defined by the majority, “publish” is “ ‘to make publicly... known.’ ” Ante at 85 (citation omitted). The act of providing a member of the public with information, without more, makes the information public. Since Pro-Seal placed the label on a package, then sent that package to a customer, there was publication.
The next requirement is that the notice be conveyed to the general public or to specific market segments. There is no definition in the CGL policy of “specific market segments.” However, given that “segment” is a synonym for “piece” or “section,” it can be presumed that “market segments” refers to particular customers or vendors in the marketplace. Rogéis II: The New Thesaurus (3d ed).
Here, as the parties agree, the geographic area where Pro-Seal and Flowserve competed, the North Slope of Alaska, contains few customers. Because the market is so restricted, communication with one customer or vendor would be communication with a market segment. Accordingly, I conclude that, the sending of the package to Roteq for delivery to a specific customer constituted giving notice to a specific market segment.
The final requirement is that the notice be for the purpose of attracting customers. Flowserve’s complaint alleges that Pro-Seal unfairly competed because its communications in the marketplace about its products and services caused Pro-Seal products and services to be confused with those of Flowserve. The essence of Flowserve’s claim is that, by shipping a seal in a Flowserve package with a label containing Pro-Seal’s *97 contact information, Pro-Seal unfairly sought to attract customers. This allegation satisfies the final requirement.
Since the allegation is that Pro-Seal infringed Flowserve’s trade dress in Pro-Seal’s “advertisement,” I believe that the complaint asserted an advertising injury, as the policy defines that term.[2] Accordingly, Citizens Insurance had a duty to defend unless a specific policy exclusion excused it.
The majority disagrees and holds that Citizens Insurance had no duty to defend. It claims that the purpose of the notice must be to attract “potential” customers. Ante at 85. According to the majority, since the package was sent to a specific customer, the purpose of its label was to “allow that specific customer to contact defendant with any questions or complaints about that product,” not to attract potential customers. Ante at 86.
The majority claims that I disregard the fact that the conduct complained of “was not undertaken to ‘attract[] customers or supporters.’ ” Ante at 86 n 6. I disagree. Actually, it is the majority that errs by improperly ignoring the complaint in deciding that there is no duty to defend. See Protective Nat’l Ins Co of Omaha v Woodhaven, 438 Mich 154, 159; 476 NW2d 374 (1991).
A closer look illustrates that the majority’s decision is contrary to crucial allegations in the complaint. Paragraph 22 of the complaint alleges that Pro-Seal’s actions have led to customer confusion and lists specific examples of such acts. Subpart e of that paragraph *98 discusses the particular act at issue in this case. Paragraphs 34 through 37 assert the unfair competition claim. Paragraph 34 repeats and realleges the allegations of the prior 33 paragraphs. Paragraphs 35 through 37 contain the substance of the unfair competition claim, which is that Pro-Seal created confusion in the marketplace and this confusion caused Flowserve to lose business.
Though the complaint never explicitly states that the particular act at issue was done to “attract[] customers or supporters,” the duty to defend cannot be limited by the precise language in the pleadings. American Bumper, 452 Mich 450-451. Rather, the insurer has a duty to look beyond the allegations to analyze whether coverage is required. Id. at 452. By asserting that the particular act at issue was done to cause confusion in the marketplace at Flowserve’s expense, Flowserve alleged that the particular act was done to attract customers.
The majority appears to agree that the act at issue was done to cause confusion in the marketplace but still concludes that it was not performed to attract customers. This conclusion ignores reality. The only reason for Pro-Seal to cause confusion in the marketplace would be to draw customers to itself and away from Flowserve. Flowserve’s complaint alleges as much by asserting that Flowserve has lost business as a result of this confusion. The majority errs by failing to look beyond the precise language used in the pleadings to determine whether there is a duty to defend.
The majority also errs by relying on the fact that the container was sent to an existing customer in order to conclude that the notice was not sent to attract customers. This fact is irrelevant. The policy says nothing about “potential” customers. As long as the complaint *99 alleges that the notice was meant to attract customers, be they existing or potential, the requirement is satisfied. Here, the complaint alleges that the container was sent to an existing customer. It further alleges that this act was done to cause confusion. Flowserve claims that this marketplace confusion made it lose business. We should consider the substance of this claim: Flowserve accused Pro-Seal of confusing this customer so that in the future the customer would conduct business with Pro-Seal under the mistaken belief that he was conducting business with Flowserve. By making this allegation, Flowserve clearly accused Pro-Seal of acting with the intent to attract future business from this particular customer.
By deciding as it does, the majority would seem to require wide-scale dissemination of information, such as by television or radio, for there to be an advertisement. I believe that it is error to impose such a requirement. There is nothing in the policy that precludes a finding that giving notice to a specific customer can qualify as an advertisement.[3] If the notice is published to the general public or to a specific market segment for the purpose of attracting customers, there is no requirement that it be widely disseminated. Rather, any such requirement is one of this Court’s own making.
It is improper to read a nonexistent limitation on coverage into an insurance policy. This is especially true where, as here, the party benefiting from the limitation drafted the policy. If Citizens Insurance had intended to require dissemination through the public airwaves or *100 communication with a large number of people, it easily could have imposed such a requirement. It did not do so. It is the insurance company’s obligation to define the coverage to be provided. The courts should not save an insurance company from the plain meaning of terms that it used in its policy or artificially limit the scope of coverage, as the majority does here.
EXCLUSIONS
As discussed above, I believe that the complaint alleged an advertising injury as that term is defined by the policy. Accordingly, Citizens Insurance has a duty to defend Pro-Seal unless a specific exclusion excuses it from this duty. See Protective Nat’l Ins Co, 438 Mich at 159.
The CGL policy’s “personal and advertising injury” coverage is subject to the following exclusion:
2. Exclusions
This insurance does not apply to:
(a) “Personal and advertising injury”:
(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict “personal and advertising injury[.]”
By requiring knowledge that the acts would violate the rights of another, this exclusion applies only to claims of intentional wrongdoing. Here, several of the allegations in Flowserve’s complaint contain no reference to intent and seek recovery for conduct that was innocent, inadvertent, negligent, or reckless. As a result, even though Citizens Insurance correctly points out that the complaint also alleged intentional wrongdoing, the exclusion does not excuse it from its duty to defend Pro-Seal. An insurer must defend its insured *101 even if theories of liability asserted are not covered under the policy, if any asserted theories of recovery fall within the policy coverage. American Bumper & Mfg Co, 452 Mich at 451.
CONCLUSION
Since the complaint alleged that Pro-Seal infringed Flowserve’s trade dress in its “advertisement,” and no specific policy exclusion excused Citizens Insurance from its duty to defend, I must dissent. I would affirm the judgment of the Court of Appeals.
Weaver, J., concurred with Kelly, J.

 “Advertisement” is defined in the CGL policy as “[n]otice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.”

 Subsection f provides another means by which there could be an advertising injury. That subsection indicates that there is an advertising injury when the injury arises out of “[t]he use of another’s advertising idea in your ‘advertisement.’ ” However, because coverage is available for an advertising injury as defined in subsection g, it is unnecessary to determine if an advertising injury was alleged as defined by subsection f.

 The policy does require that the notice be sent to the general public or specific market segments. However, this language does not preclude situations, like this one, where the market is so restricted that one customer would constitute a specific market segment.