683 N.W.2d 161 (2004)
261 Mich.App. 367
AMERICAN BUMPER & MANUFACTURING COMPANY and Jack C. Skoog, Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY of Pittsburgh, PA, Defendant-Appellee, and
American International Group, Inc., Lansing Insurance Agency, and L. John Wenglarski, Defendants.
American Bumper & Manufacturing Company and Jack C. Skoog, Plaintiffs-Appellees,
v.
National Union Fire Insurance Company of Pittsburgh, PA, Defendant-Appellant, and
American International Group, Inc., Lansing Insurance Agency, and John L. Wenglarski, Defendants.
Docket Nos. 245342, 245367.
Court of Appeals of Michigan.
Submitted March 2, 2004, at Lansing.
Decided March 23, 2004, at 9:15 a.m.
Released for Publication June 24, 2004.
Gruel Mills Nims & Rylman LLP (by Thomas R. Behm and Brion J. Brooks), Grand Rapids, for American Bumper & *162 Manufacturing Company and Jack C. Skoog.
Plunkett & Cooney, P.C. (by Robert G. Kamenec, Charles W. Browning, and Stephen P. Brown), Bloomfield Hills, for National Union Fire Insurance Company of Pittsburgh, PA.
Before: FITZGERALD, P.J., and MARK J. CAVANAGH and HOEKSTRA, JJ.
FITZGERALD, P.J.
In this declaratory judgment action, the trial court granted summary disposition in favor of plaintiffs American Bumper & Manufacturing Company and Jack C. Skoog[1] (American Bumper) on the ground that National Union Fire Insurance Company of Pittsburgh, PA wrongfully refused to defend American Bumper, its insured, in two wrongful death actions arising from a single incident in which two American Bumper employees were killed. The trial court entered judgment in favor of American Bumper for defense of the lawsuits in the amount of $1,522,000 and awarded American Bumper prejudgment interest of $885,732. The court refused to award the costs of settlement as an element of damages for breach of the duty to defend. Both parties appeal as of right. We vacate and remand.

FACTS
On September 20, 1991, two American Bumper employees, Stephen Eilar and Ricky Dora, were killed when a mechanical press allegedly malfunctioned and recycled on its own, crushing the employees. The personal representative of Eilar's estate brought a wrongful death action contending that Eilar's injuries were the result of an intentional tort outside the ambit of the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 et seq.[2] The personal representative of Dora's estate filed a similar complaint on the same grounds. The lawsuits were consolidated.
Each underlying complaint was designed to avoid the exclusive remedy provision of the WDCA.[3] In the Eilar case, the second amended complaint contained three counts: countI  defendant Skoog (intentional tort); count II  American Bumper (intentional tort); count III  defendants American Bumper and Skoog (intentional nuisance in fact).[4] In counts I and II, the complaint alleged that American Bumper committed an intentional tort by [its] deliberate acts which caused dangerous *163 and hazardous work conditions at the American Bumper Plant, and Defendant had actual knowledge that an injury was certain to occur as a result of [its] act, and defendant willfully disregarded that knowledge, and Defendant thereby specifically intended the injury to Stephen Christopher Eilar.... [Emphasis added.]
In count III of the Eilar complaint, entitled "Intentional Nuisance in Fact," the plaintiff incorporated the previous paragraphs of the complaint (1-23) and contended that the American Bumper Ionia Plant was
operated and maintained at or before the time of the injury to Stephen Eilar in such an intentional and deliberate manner that its condition had a natural tendency to create danger and to inflict injury to its employees.
The first amended complaint in the Dora case alleged intentional torts against American Bumper and Skoog (counts I and II), asserting that Dora's death was caused by the "intentional, willful, and wanton acts of the Defendant" and that the deliberate acts "proximately caused and intended Plaintiff's decedent's death." Count III pleaded intentional nuisance in fact, asserting that
at the time of the Defendants' intentional acts, they knew that injury resulting from the condition was substantially certain to result from the conditions that existed.[[5]]
American Bumper tendered the claims to each of its insurance carriers that issued policies in effect at the time of the accident, including Employers Reinsurance (worker's compensation/employer's liability), Federal Insurance Company (primary general liability), and National Union (excess umbrella). Federal denied the claim, and Employers Reinsurance agreed to pay its policy limits. National Union investigated the claim and advised American Bumper that coverage might not be afforded because of the nature of the Eilar and Dora allegations. On October 27, 1992, National Union declined American Bumper's claim.
In 1993, American Bumper filed a motion for summary disposition in the underlying consolidated cases in which it asserted that the plaintiffs had not and could not produce proofs to establish an intentional tort under the WDCA. The trial court agreed and granted summary disposition in favor of American Bumper in an opinion dated October 28, 1993. Both plaintiffs appealed to this Court. While the cases were on appeal, American Bumper settled both cases for a combined amount of $2 million, with $1.2 million allocated to Eilar and $800,000 allocated to Dora. On April 28, 1997, this Court dismissed the appeals. On May 12, 1997, the circuit court entered an order of dismissal pursuant to the settlement.
On several subsequent occasions during the course of the underlying proceedings, National Union examined American Bumper's claim for insurance coverage. On January 10, 1997, National Union advised American Bumper that it would not change its original position of declining coverage and refusing to defend. On March 7, 1997, American Bumper filed this declaratory action.
On April 30, 1999, the trial court denied National Union's renewed motion for summary disposition and granted partial summary disposition as a matter of law in favor of American Bumper concerning National *164 Union's duty to defend American Bumper in the underlying lawsuits. The trial court interpreted the duty to defend language of the policy to be fully independent of the indemnity language:
However, the defense paragraph indicates that it covers occurrences covered under the policy which is a different language than what the coverage paragraph says. The coverage says, to which the insurance applies and occurrence is defined in the policy.
Nothing is excluded in the defense obligation. It doesn't say that the defense only applies if there's no coverage  or there's no defense if there's no coverage. I think to be clear, the section regarding defense should have said that the occurrence resulted in liability to pay and it didn't say that. It just says it covers an occurrence. So because of this difference, there must be some different intention of the parties to do this.
The court eventually awarded $1,522,000 as defense costs for the underlying lawsuits, and prejudgment interest in the amount of $885,732.

Docket No. 245367
The personal representatives of the estates of Eilar and Dora sued American Bumper under the intentional tort exception to the WDCA. MCL 418.131(1). The intentional tort exception allows imposition of liability under two distinct sets of circumstances. First, the employer specifically intended the injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. Travis v. Dreis & Krump Mfg. Co., 453 Mich. 149, 551 N.W.2d 132 (1996). The second set of circumstances is known as the legislatively prescribed "inferred intent" tort. A review of the complaints reveals that the Eilar plaintiff relied on the first exception (American Bumper "specifically intended to injure") and that the Dora plaintiff relied on the second exception (American Bumper had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge).
National Union's excess umbrella liability policy provides under the heading "Coverage":
A. We will pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limit as hereinafter defined, which the Insured will become legally obligated to pay as compensatory damages (excluding all fines, penalties, punitive or exemplary damages) because of Personal Injury, Property Damage Liability or Advertising Liability, caused by an occurrence to which this insurance applies.... [Emphasis added.]
Under the heading "Defense," the policy provides:
A. The provisions of this section apply solely to occurrences covered under this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured....
1. We will defend any suit against the Insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof even if such suit is groundless, false or fraudulent, but we will have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by us.... [Emphasis added.]
Under the heading "Definitions," "occurrence" is defined:
1. With respect to Personal Injury and Property Damage, the term occurrence *165 means an event, including continuous or repeated exposures to conditions, which result in Personal Injury and Property Damage neither expected nor intended from the standpoint of the Insured. [Emphasis added.]
Under the heading "Exclusions," the policy provides:
This policy does not apply:
* * *
15. to any liability resulting from personal injury or property damage which is expected or intended by the insured, except that this Exclusion does not apply to Personal Injury resulting from the use of reasonable force to protect persons or property. [Emphasis added.]
The present action was brought by an employer against its insurers to determine whether allegations relating to its employees fell within the coverage provided by the insurance policy. Thus, the determination is not whether the allegations successfully avoid the exclusive remedy provision of the WDCA, but whether those allegations are comprehended by a particular insurance policy. Whether National Union is contractually obligated under the policy to defend American Bumper against the claims is a question of law requiring interpretation of an insurance contract. Auto-Owners Ins. v. Harrington, 455 Mich. 377, 381, 565 N.W.2d 839 (1997).
An insurer is not required to defend its insured against claims specifically excluded from policy coverage. Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven, 438 Mich. 154, 159, 476 N.W.2d 374 (1991). Where policy language is clear, this Court is bound by the specific language set forth in the policy. South Macomb Disposal Auth. v. American Ins. Co. (On Remand), 225 Mich.App. 635, 657, 572 N.W.2d 686 (1997).
The National Union policy provides coverage for injury caused by an "occurrence" to which the policy applies, and also provides that the defense provision of the policy applies solely to "occurrences covered under this policy." An occurrence is defined as "an event ... neither expected nor intended from the standpoint of the insured." Similarly, the policy provides an exclusion for "any liability resulting from Personal Injury ... which is expected or intended by the insured." The plain language of the policy demonstrates that the policy excludes both coverage and a defense for occurrences of injury that were subjectively expected by the insured. This Court has interpreted exclusionary language identical to that in the National Union policy and concluded that it differs from the language of an insurance policy excluding coverage for events "caused intentionally" in that it excludes coverage for occurrences of injury that were subjectively expected by the insured. Metropolitan Property & Liability Ins. Co. v. DiCicco, 432 Mich. 656, 673, 443 N.W.2d 734 (1989). Indeed, this Court has acknowledged that "the addition of the word `expected' expands the meaning of the `caused intentionally' language" in an insurance policy exclusion clause. Id.
Thus, the policy exclusion will preclude coverage in this case if the court can find as a matter of law that, from the standpoint of American Bumper, the bodily injury to Eilar and Dora was either expected or intended. Because the Eilar complaint alleged that American Bumper specifically intended the injury, the policy exclusion clearly precludes coverage in the Eilar case.
The Dora complaint alleged that American Bumper had knowledge of the conditions that caused Dora's injury, that American *166 Bumper had knowledge that an injury was certain to occur, and that American Bumper disregarded the fact that an injury was certain to occur. The only way that the Dora plaintiff could avoid the exclusive remedy provisions of the WDCA was by proving that injury was certain to occur and that American Bumper willfully disregarded the fact that injury was certain to occur.
In Cavalier Mfg. Co. v. Employers Ins. of Wausau, 211 Mich.App. 330, 333-334, 535 N.W.2d 583 (1995), remanded 453 Mich. 953, 564 N.W.2d 886 (1996), this Court held that where an employee alleges acts sufficient to constitute an intentional tort within the meaning of the WDCA, those same allegations do not necessarily constitute "bodily injury intentionally caused" within the meaning of the insurance policy exclusion at issue in that case.[6] The policy exclusion in Cavalier, however, excluded only "bodily injury intentionally caused." The exclusion in the present case is different in that it excludes injury expected or intended from the standpoint of the insured.
In Golec v. Metal Exchange Corp., unpublished opinion per curiam of the Court of Appeals, issued January 11, 2002, 2002 WL 44414 (Docket Nos. 220166, 220444), a divided panel of this Court held that an employer's willful disregard of actual knowledge that an injury was certain to occur is not the legal equivalent of the injury being "expected or intended from the standpoint of the insured." Id., p. 8. The majority concluded that "it is possible to deliberately disregard actual knowledge that an injury is certain to occur without actually intending or expecting the injury." Id. Although the majority did not detail its reasoning, it explained:
The [implied intentional tort] provision holds an employer responsible for an intentional injury when, although the injury was not truly intended, the circumstances were such that the employer was aware of all the elements leading to certain injury, although for some reason, the employer ignored the obvious and placed the employee in harm's way. Under these circumstances, it may or may not be the case that the employer subjectively expected the injury to occur. The employer may have ignored the obvious, without actually intending injury, but, nevertheless, expecting it and being indifferent to it. Or, the employer may have ignored the obvious because although all the elements leading to certain injury were present and known to the employer, the employer did not bother to put two and two together in its haste to get the job done. The policy exclusion requires consideration of the subjective intent to the employer. Under this standard, liability under the [implied intentional tort] provision does not preclude coverage as a matter of law. Such is the case here. [Id.]
In National Union Fire Ins. Co. of Pittsburgh, PA v. Rodriguez, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued February 12, 2004 (Docket No. 03-71738), in analyzing the majority holding in Golec, the court stated at op. pp. 14-15:
Thus, under the Golec court's understanding, an employer could accidentally or negligently disregard actual knowledge *167 of certain injury "in its haste to get the job done." Id. To the contrary, however, the Michigan Supreme Court clearly indicated that the terms "willfully disregards" in the WDCA are `intended to underscore that the employer's act or failure to act must be more than mere negligence....' Travis [v. Dreis & Krump Mfg. Co., 453 Mich. 149, 551 N.W.2d 132 (1996)]. Furthermore, the Golec opinion seems inconsistent with Travis in that Travis stands for the proposition that the implied intentional tort provision of the WDCA provides an avenue to infer a specific intent to injure on the part of the employer. Id. at 143. If a specific intent to injure is inferred as a matter of law based on the employer's willful disregard of actual knowledge that an injury is certain to occur, this Court fails to see how the same state of mind is not also sufficient to infer a subjective expectation of injury as a matter of law. This is also the conclusion arrived at by Judge Talbot, who dissented in Golec.

In his dissent in Golec, Judge Talbot stated:
It [the trial court] opined that the exception to the WDCA that applied to the instant case, that plaintiff's employer "disregarded actual knowledge that an injury was certain to occur," did not amount to intentionally causing an injury for the purposes of the WC/EL policy exclusion, but did not amount to expecting an injury for the purposes of the CUP policy exclusion. Accordingly, the subjective expectation of injury could be inferred as a matter of law. I agree.
It appears that plaintiff was in a no-win situation with regard to the CUP. Whether his employer disregarded actual knowledge that plaintiff would be injured is a question of fact for the jury to resolve. See Travis v. Dreis & Krump Mfg. Co., 453 Mich. 149, 184-187, 551 N.W.2d 132 (1996). If the case had gone to trial, plaintiff would have had to prove that his employer disregarded actual knowledge that plaintiff would be injured in order to survive the exclusive remedy provision of the WDCA. Id.; see also Cavalier Mfg. Co. v. Employers Ins. of Wausau, 211 Mich.App. 330, 340, 535 N.W.2d 583 (1995). If plaintiff had been successful in that regard, then in my opinion and contrary to the majority's holding, the CUP would not cover plaintiff's injuries; they would be excluded as bodily injuries expected by the insured employer. If, instead, plaintiff had failed to prove that his employer disregarded knowledge of certain injury, the CUP exclusion for "bodily injury ... either expected or intended from the standpoint of the insured" would not preclude coverage, but the exclusion for workers compensation claims would do so.
I disagree with the majority's distinction between the disregard of knowledge of certain injury and the expectation of injury. Because I do not subscribe to the majority's conclusion that "it is possible to deliberately disregard actual knowledge that an injury is certain to occur without actually intending or expecting the injury, I would affirm the trial court's conclusion that the CUP excludes coverage for plaintiff's injuries. [Id., pp. 1-2 (emphasis in original).]
We are persuaded by the reasoning in Judge Talbot's dissent and in the National Union opinion and conclude that American Bumper's subjective expectation of injury is inferred as a matter of law. We fail to see how American Bumper could have committed any acts with the belief that the deceased employees were certain to be injured, yet not have expected such injuries to occur. The policy exclusion for "bodily injury... either expected or intended *168 from the standpoint of the insured" effectively bars coverage for the underlying claims. See also Wedge Products, Inc. v. Hartford Equity Sales Co., 31 Ohio St.3d 65, 509 N.E.2d 74 (1987), and Westfield Ins. Co. v. Jarrett Reclamation Services, Inc., 114 Ohio App.3d 492, 683 N.E.2d 415 (1996) (no coverage afforded for intentional tort in a policy providing protection for injuries "neither expected nor intended from the standpoint of the insured"). Because there is no possibility of coverage under the policy for either of the actions filed against American Bumper, it follows that National Union had no duty to defend against those actions. Marlo Beauty Supply, Inc. v. Farmers Ins. Group of Cos., 227 Mich.App. 309, 315, 575 N.W.2d 324 (1998), modified on other grounds by Harts v. Farmers Ins. Exchange, 461 Mich. 1, 597 N.W.2d 47 (1999) (the duty to defend is tied to the availability of coverage).[7]
The judgment in favor of American Bumper and Skoog is vacated, and the case is remanded for entry of an order granting summary disposition in favor of National Union. Jurisdiction is not retained.
HOEKSTRA, J., concurred.
MARK J. CAVANAGH, J., (dissenting).
The issue is whether defendant insurer had a duty to defend against the underlying intentional tort claims in this declaratory judgment action. I respectfully disagree with the majority's determination that there was no such duty.
The insurance policy at issue provides that it does not give rise to a duty to defend or provide coverage for injuries unless they were the result of an "occurrence," which is defined as an event neither expected nor intended from the insured's standpoint.
With regard to the "duty to defend" obligation, the law provides:
An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. [American Bumper & Mfg. Co. v. Hartford Fire Ins. Co., 452 Mich. 440, 451-452, 550 N.W.2d 475 (1996) (citations and quotations omitted).]
Therefore, we must consider whether the intentional tort claims filed in the underlying cases could conceivably be covered by the policy; could the injuries have resulted from an "occurrence"  an event neither expected nor intended by the insured?
The underlying claims were brought under the intentional tort exception, which provides:
An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether *169 an act was an intentional tort shall be a question of law for the court. [MCL 418.131(1).]
In Travis v. Dreis & Krump Mfg. Co., 453 Mich. 149, 551 N.W.2d 132 (1996), our Supreme Court construed the first sentence as imposing a specific intent requirement  "the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." Id. at 172, 551 N.W.2d 132. The Travis Court then held that the second sentence was to "be employed when there is no direct evidence of intent to injure, and intent must be proved with circumstantial evidence. It is a substitute means of proving the intent to injure element of the first sentence." Id. at 173, 551 N.W.2d 132. The Court noted that the second sentence reads: "An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." Id. at 172, 551 N.W.2d 132. The Court concluded:
If we read both sentences ... together, it becomes evident that an employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The second sentence then allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge. [Id. at 180, 551 N.W.2d 132.]
Here, the personal representatives of the two deceased employees' estates brought separate intentional tort actions; the first, concerning Eilar, claimed that this employer specifically intended an injury, and the second, concerning Dora, claimed that this employer had actual knowledge that an injury was certain to occur and willfully disregarded it. The issue, then, is whether defendant had a duty to defend the employer against these allegations, i.e., whether it is at least arguable that there had been an occurrence within the scope of coverage triggering the duty, until it became clear from the factual development that the actions were outside the scope of coverage. See American Bumper & Mfg. Co., supra at 455, 550 N.W.2d 475.
The majority seems to conclude that, because the underlying complaints against the insured alleged intentional torts, no duty to defend against those claims arose. The reasoning is that the mere allegations of specific intent to injure and willful disregard of knowledge that an injury was certain to occur are sufficient to negate the duty to defend. In essence the majority concludes, as a matter of law, that these allegations automatically trigger the exclusionary part of the occurrence provision  "for bodily injury ... neither expected nor intended from the standpoint of the insured." I respectfully disagree.
The majority looks to Golec v. Metal Exchange Corp., unpublished opinion per curiam of the Court of Appeals, issued January 11, 2002, 2002 WL 44414 (Docket Nos. 220166, 220444), for guidance in this case. However, in Golec the issue was whether the insurer was contractually obligated to provide coverage, i.e., pay a consent judgment, after the parties negotiated a settlement following our Supreme Court's holding that there was a genuine issue of material fact regarding whether the employer committed an intentional tort against its employee. The trial court dismissed the claim seeking insurance coverage regarding the judgment on the ground that, when an employer disregards the fact that an injury is certain to occur, the employer's subjective expectation of injury should be inferred as a matter of law, triggering the exclusionary part of *170 the "occurrence" provision. The Golec Court disagreed with this absolute rule of law, holding that an employer's willful disregard of actual knowledge that an injury was certain to occur does not always mean that the insured "expected or intended" the injury within the contemplation of the insurance policy "occurrence" provision. In other words, the resolution of the issue whether the employer expected to injure the employee depends on the facts. I agree with the proposition that an automatic presumption of an employer's culpable mens rea without proper factual development is untenable. However, the resolution of the case before this Court does not depend on the Golec holding. The issue here is not whether the insurer must provide coverage for an alleged intentional tort; rather, the issue here is whether an insurer can deny its duty to defend simply because an intentional tort was alleged in a complaint against the employer.
The applicable reasoning in support of concluding that defendant in this case had a duty to defend can be found in the analogous case of American Bumper, supra. In that case, the plaintiff was charged by the Environmental Protection Agency with groundwater contamination. Id. at 445-446, 550 N.W.2d 475. The plaintiff filed claims with their insurance providers demanding that they assume the defense against the EPA claims. Id. at 445, 550 N.W.2d 475. The insurers refused on the ground that they had no duty to defend because the claims did not arise from an "occurrence" (an accident neither expected nor intended) and because the claims fell within the ambit of the pollution exclusionary provision. Id. at 449, 453-454, 550 N.W.2d 475. Our Supreme Court rejected these arguments on the grounds that until factual determinations were made, it was unclear whether an "occurrence" had taken place and whether the exclusionary provision applied since it was not established whether the plaintiff had caused a contamination or that any such contamination was expected or intended. Id. at 453-456, 550 N.W.2d 475. The Court continued that such uncertainty must be resolved in favor of the policyholder, and thus gives rise to a duty to defend until such time as the uncertainty is resolved. Id. at 455, 550 N.W.2d 475. Hindsight acquired after the necessary factual development does not relieve an insurer of its initial duty to defend. Id. The Supreme Court opined that "[w]e find it difficult to believe that [the plaintiff] `expected or intended' that its apparently lawful use of the seepage lagoon would result in property damage requiring remediation." Id. at 456, 550 N.W.2d 475.
Similarly, I find it difficult to believe that, under the "occurrence" provision of the insurance policy, the employer in this case expected or intended to kill two of its own employees through the use of a malfunctioning mechanical press. Without the benefit of factual development that resolves this uncertainty, I would not wholly relieve insurers, including defendant, of the duty to defend against these intentional tort claims, whether or not the insurers are eventually relieved of their duty to indemnify. Accordingly, I would affirm the trial court's decision, albeit for different reasons.
NOTES
[1] Skoog was the principal stockholder and chief operating officer of American Bumper. He was therefore sued as an agent of American Bumper.
[2] It is well-settled that the WDCA's exclusive remedy provision applies equally to recovery against coemployees, officers, and agents of the employer. Berger v. Mead, 127 Mich.App. 209, 213-214, 338 N.W.2d 919 (1983). Thus, the same analysis applies to both American Bumper and Skoog.
[3] Any cause of action that did not plead intentional conduct would be barred by the exclusive remedy provision of the WDCA. Further, the National Union policy contains a worker's compensation exclusion.
[4] Eilar's second amended complaint and Dora's first amended complaint did not contain any counts alleging nonintentional torts against American Bumper. Although Eilar and Dora subsequently moved to amend their complaints to add counts of fraudulent concealment and "willful/wanton misconduct and gross negligence," the trial court rejected the proposed amendments, finding that the counts were barred by the exclusive remedy provision of the WDCA. Accordingly, because the proposed amendments were never approved in the underlying case, American Bumper's arguments regarding the duty to defend the claims are misplaced.
[5] Count IV was against defendant D & S Machine Repair and count V was against defendant Midwest Brake Bond Company.
[6] The Court reasoned that because such an exclusion requires both an intentional act and an intentionally caused injury, it is possible for an employee to allege an implied intentional tort under the WDCA without coming within the policy exclusion as a matter of law because unlike the exclusion, the implied intentional tort does not require a specific intent to harm. Id.
[7] In light of our holding, we need not address the remainder of the issues raised in Docket Nos. 245342 and 245367.