# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY MATOUK,

      Plaintiff-Appellee,

v

MICHIGAN MUNICIPAL LEAGUE LIABILITY
& PROPERTY POOL,

      Defendant-Appellant.

FOR PUBLICATION
July 11, 2017
9:20 a.m.

No. 332482
Macomb Circuit Court
LC No. 15-003573-CK

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

JANSEN, J.

Defendant appeals by leave granted[1] an order granting partial summary disposition in favor of plaintiff entered after the trial court determined that defendant was contractually obligated to defend plaintiff, a police officer for the City of Harper Woods, in a federal civil rights action wherein plaintiff is a named defendant. We reverse.

This case arises from a federal lawsuit brought against plaintiff and a number of other individually named police officers and related defendants after the January, 2010 disappearance and death of plaintiff's cousin, JoAnn Matouk Romain. On the day of her disappearance, Romain allegedly drove from her home in Grosse Pointe Woods to attend church services in Grosse Pointe Farms. Romain never returned home, and her vehicle was later found in the parking lot of her church, across the street from the shore of Lake St. Clair. An investigation by the Grosse Pointe Woods and Grosse Pointe Farms police departments revealed some evidence that Romain walked out onto the frozen lake and fell through the ice. Although a search ensued, Romain's body was not found until three months later. Romain's death was deemed a suicide. However, members of Romain's family believe that Romain was murdered, and that the Grosse Pointe Woods and Grosse Pointe Farms police departments conspired to conceal the crime. Romain's family members also believe that plaintiff, who is Romain's cousin as well as a police officer for Harper Woods, either murdered Romain or participated in the cover-up conspiracy.

---

[1] *Matouk v Mich Muni League Liability & Prop Pool*, unpublished order of the Court of Appeals, entered August 4, 2016 (Docket No. 332482).

Romain's family, on behalf of Romain's estate, brought a complaint against the city of Grosse Pointe Farms, the city of Grosse Pointe Woods, 19 individual police officers, and an individual identified as "Suspect One," in the Eastern District of Michigan. Although plaintiff was not named in the original complaint, a second amended complaint in the federal lawsuit names plaintiff "individually and in his official capacity as a public safety officer for the City of Harper Woods," among the defendants, which include all of the municipal and police defendants named in the original complaint, as well as individuals identified as "John Doe" and "Killer John Doe." As to "all defendants," the complaint alleges (1) violation of Romain's civil rights under 42 USC § 1985 for conspiracy to deny Romain her equal protection of the law by covering up her murder, and (2) violation of Romain's civil rights under 42 USC § 1983 for "state-created danger" in the defendants' acts of informing Romain's killer that they would cover up the murder and rule it a suicide. A third count, for violation of Romain's civil rights under 42 USC § 1983 for "failure to implement appropriate policies, customs, and practices," is labeled "as to all defendants," but clearly applies only to the city of Grosse Pointe Woods and the city of Grosse Pointe Farms. The fourth count is brought against 17 of the named defendants, including plaintiff, and alleges violations of Romain's civil rights under 42 USC § 1983 for wrongful death.

Defendant, as a liability insurer, provides liability coverage for the city of Grosse Pointe Woods and the city of Grosse Pointe Farms. Pursuant to their municipal liability policies, defendant agreed to provide a defense to the federal action for the two municipalities and all of their police officers. The city of Harper Woods, where plaintiff was employed at the time of the alleged misconduct, also has a municipal liability insurance policy (the Policy) with defendant. However, defendant refused to provide for plaintiff's defense in the federal action, asserting that the specific allegations of misconduct against plaintiff fell outside defendant's policy.

Plaintiff brought a complaint for declaratory judgment in the Macomb Circuit Court, seeking to compel defendant to pay for his defense in the federal court action. Defendant brought a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that coverage under the city of Harper Woods' municipal liability policy only extends to a Harper Woods employee for damages arising from conduct "within the scope of their employment by or duties on behalf of," Harper Woods. The trial court denied defendant's motion as premature because discovery had not yet closed. However, less than a month later, plaintiff brought his own motion for partial summary disposition, limited to the subject of defendant's duty to defend, under MCR 2.116(C)(10). This time, the trial court granted the motion, concluding that "the Defendant has a contractual obligation to provide a defense to Plaintiff for the *Romain* case pursuant to the terms of the Defendant's subject insurance policy."

On appeal, defendant argues that the trial court erred when it determined that defendant was contractually obligated to provide plaintiff with a defense in the federal lawsuit under the Policy because the misconduct alleged in the federal complaint was not undertaken within the scope of plaintiff's employment. We agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a

genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). "Questions of law relative to declaratory judgment actions are reviewed de novo, but the trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion." *Pioneer State Mutual Ins Co v Dells*, 301 Mich App 368, 376; 836 NW2d 257 (2013).

Whether defendant is contractually obligated under the Policy to defend or indemnify certain claims is a question of law that requires interpretation of the insurance policy. *American Bumper & Mfg Co v Nat'l Union Fire Ins Co*, 261 Mich App 367, 375; 683 NW2d 161 (2004). "[T]he proper construction and application of an insurance policy presents a question of law that is reviewed de novo." *Pioneer State Mutual Ins Co*, 301 Mich App at 376-377. "While the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact, the issue may be decided as a matter of law where it is clear that the employee was acting to accomplish some purpose of his own." *Bryant v Brannen*, 180 Mich App 87, 98; 446 NW2d 847 (1989).

"It is well-established that an insurer has a duty to defend an insured and that such duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 480-481; 642 NW2d 406 (2001) (quotation marks and citation omitted). Additionally, "[a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Detroit Edison Co v Mich Mut Ins Co*, 102 Mich App 136, 142; 301 NW2d 832 (1980). "In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." *Id*.

In determining whether an insurer has a duty to defend its insured, we are required to look at the language of the insurance policy and construe its terms. *Allstate Ins Co v Fick*, 226 Mich App 197, 201-202; 572 NW2d 265 (1997). An insurance policy's terms are given their "commonly used meaning" if not defined in the policy. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112; 595 NW2d 832 (1999). Unambiguous insurance policy language must be enforced as written. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 570; 596 NW2d 915 (1999). If the policy is ambiguous, it will be construed in favor of the insured to require coverage. *Royce v Citizens Ins Co*, 219 Mich App 537, 542-543, 557 NW2d 144 (1996).

Insurers are free to limit the scope of their liability by excluding particular conduct from coverage. *Auto Club Group Ins Co v Daniel*, 254 Mich App 1, 4; 658 NW2d 193 (2002). And while "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured," *Century Surety Co v Charron*, 230 Mich App 79, 83; 583 NW2d 486 (1998), "[c]overage under a policy is lost if *any* exclusion in the policy applies to an insured's particular claims," *id* (emphasis added). Clear and specific exclusions must be given effect because an insurance company cannot be liable for a risk it did not assume. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

Neither of the parties contends that the language of the Policy is ambiguous. Therefore, we will simply apply the policy according to its terms. Notably, in the absence of any ambiguity in the policy language, we need not construe the policy against the insurer. Defendant's obligation to defend an insured against wrongful acts is defined under Coverage D of Section I of the Policy. In pertinent part, that section provides:

**COVERAGE D — PUBLIC OFFICIALS LIABILITY**

*1.      Coverage Agreement.*

We will pay those sums which the insured becomes legally obligated to pay as **Damages** by reason of a **Wrongful Act** to which this coverage applies committed in and arising out of discharge of public duties. . . .

\* \* \*

c.      Our right and duty to defend end when we have used up the applicable Limit of Liability in payment of **Damages** or **Loss Adjustment Expense** as described in SECTION III — LIMITS OF COVERAGE.

"Wrongful Act" is defined under Section VI of the Policy as follows:

**Wrongful Act** means any actual or alleged error or misstatement or act of omission or neglect or breach of duty including misfeasance, malfeasance or nonfeasance including violation of civil rights, discrimination (unless coverage thereof is prohibited by law), but only with respect to liability other than for fines and penalties imposed by law and improper service of process, by the **Member** in their official capacity, individually or collectively, or any matter claimed against them solely by reason of their having served or acted in an official capacity. All **Claims** and **Damages** arising out of the same or substantially same or continuous or repeated Wrongful Act shall be considered as arising out of one Wrongful Act.

Importantly, even for an insured, the Policy's protections are clearly limited. Section II of the policy, entitled "Who is Covered," states that the Policy provides coverage for an insured, "only for acts within the scope of [the insured's] employment or duties on behalf of the **Member**." This limitation applies to all coverages under the Policy, including the coverage for public officials liability in Section I. "Member" refers to the "governmental agency named on the declaration page," in this case, the city of Harper Woods. In sum, pursuant to the Policy, defendant is required to provide coverage for (1) an insured, (2) who has committed any wrongful act, according to the above definition, arising out of the discharge of public duties, (3) "within the scope of their employment by or duties on behalf of the **Member**."

The parties do not dispute that plaintiff, in his capacity as a police officer for the city of Harper Woods, was an "insured" under the Policy at all times relevant to these proceedings. It is also undisputed that the misconduct in which plaintiff allegedly engaged, as delineated in the federal complaint, comprised a number of wrongful acts as defined in Section VI of the Policy. Indeed, the federal complaint specifically alleges various forms of misfeasance and malfeasance,

-4-

including "violation of [Romain's] civil rights," against all named defendants, including plaintiff. It is the third requirement of coverage at issue here. Namely, whether plaintiff's alleged misconduct fell "within the scope of [his] employment by or duties on behalf of" the city of Harper Woods.[2]

"Scope of employment" is not a term that is specifically defined in the policy. However, as with any other contract, we give the terms of an insurance policy their plain and ordinary meaning. *DeFrain v State Farm Mut Auto Ins Co,* 491 Mich 359, 367; 817 NW2d 504 (2012). Our Supreme Court has defined "within the scope of employment" to mean "engaged in the service of his master, or while about his master's business." *Hamed v Wayne County*, 490 Mich 1, 11; 803 NW2d 237 (2011) (quotation marks and citation omitted); see also *Rogers v JB Hunt Transport, Inc*, 466 Mich 645, 651; 649 NW2d 23 (2002) ("An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control.") "Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Hamed*, 490 Mich at 11. As our Supreme Court explained in *Rogers*, 466 Mich at 651:

> [I]t is well established that an employee's negligence committed while on a frolic or detour, or after hours, is not imputed to the employer. In addition, even where an employee is working, vicarious liability is not without its limits. For example, we have held that "there is no liability on the part of an employer for torts intentionally or recklessly committed by an employee beyond the scope of his master's business." [Citations omitted.]

However, "[a]lthough an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*.

---

[2] Throughout his appellate brief, plaintiff suggests that the misconduct alleged in the federal complaint constituted wrongful acts falling within the scope of his employment because it was "committed in and arising out of [his] discharge of public duties," or "solely by reason of [plaintiff's] having served or acted in an official capacity." Plaintiff misinterprets the Policy. These phrases, while contained within Sections I and VI of the Policy, do not define the "scope of employment" for purposes of Section II, which blanketly applies to all stated coverages under the policy. Plaintiff does not argue that the presence of these phrases within the policy creates any ambiguity in the plain language of Section II, and we reject any attempt by plaintiff to expand the meaning of "scope of employment" beyond its accepted meaning. To the extent the trial court relied on these phrases to define "scope of employment" for purposes of Section II, we find that it erred. Under the plain language of the contract, plaintiff is entitled to a defense only for a wrongful act "committed in and arising out of his discharge of public duties" *and* within the "scope of employment." Failure to meet either of these requirements defeats liability for defense coverage.

Consistent with these principles, the Second Restatement of Agency, 2d § 228, p 504, provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

This section of the Restatement provides a useful outline for our consideration of whether plaintiff's conduct, as alleged in the federal complaint, fell within the scope of plaintiff's employment. See *Zsigo v Hurley Medical Center*, 475 Mich 215, 221; 716 NW2d 220 (2006).

Plaintiff suggests that we need not reach a determination on the matter. According to plaintiff, the federal district court has already determined that the civil rights violations alleged in the federal complaint "are plausibly alleged against [plaintiff]," because "if plaintiff did participate in the investigation of Romain's death, he could not have done so without the authority of his office." No such findings were submitted to the trial court and they are not part of the record on appeal. MCR 7.210(A); see also *Wiand v Wiand*, 178 Mich App 137, 143; 443 NW2d 464 (1989) ("This Court's review is limited to the record developed by the trial court and we will not consider facts outside the record."). In any case, we are not bound by the alleged findings of the federal district court judge, which we find inconsistent with established Michigan law. It is not dispositive that plaintiff could not have become involved with the conspiracy supporting the allegations of civil rights violations if plaintiff did not have the authority to act in his capacity as a police officer. In a closely related context, our Supreme Court declined to adopt an exception to the general rule of respondeat superior, that an employer is not liable for the torts of its employees who act outside the scope of employment, when "the employee is aided in accomplishing the tort by the existence of an agency relation" between the employee and the employer. *Zsigo*, 475 Mich at 217. The Court explained:

[I]t is difficult to conceive of an instance when the exception would not apply because an employee, by virtue of his or her employment relationship with the employer is always "aided in accomplishing" the tort. *Because the exception is not tied to the scope of employment but, rather, to the existence of the employment relation itself, the exception strays too far from the rule of respondeat superior employer nonliability.* [*Id*. at 226.]

The same reasoning applies in this context. To impose liability on an employer, such that a liability policy like the one at issue here would be required, for acts of an employee outside the

-6-

scope of employment that could not be accomplished without the authority of their office, would defy common sense. Such a rule would result in the imposition of liability on employers for wrongful actions of police officers, doctors, teachers, and countless other professionals who, solely by nature of their employment, possess the necessary access and authority to engage in conduct, criminal or otherwise, that an average person could not, regardless of whether these wrongful actions arose within the scope of employment.

Plaintiff suggests that his alleged misconduct was arguably within the scope of his employment because "on the date that [Romain] allegedly disappeared, [plaintiff] was on duty for Harper Woods." Plaintiff's argument lacks merit. It is not dispositive that plaintiff was "on duty" during the hours surrounding Romain's disappearance, as the typical time period or shift of employment does not determine whether a plaintiff acts within the scope of his employment. An employee may easily engage in activities outside the scope of his employment during regular work hours. As previously discussed, "it is well established that an employee's negligence committed while on a frolic or detour . . . is not imputed to the employer," and "even where an employee is working, vicarious liability is not without its limits." *Rogers*, 466 Mich at 651. In *Riley v Roach*, 168 Mich 294, 307-308; 134 NW 14 (1912), our Supreme Court explained: "The phrase 'in the course or scope of his employment or authority,' when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business. It is not synonymous with 'during the period covered by his employment.' "

More importantly, although it is undisputed that plaintiff was on duty for the city of Harper Woods on the date of Romain's disappearance, it is *also* undisputed that plaintiff was not involved in Romain's investigation on that day, and that the investigation of Romain's death was in no way related to plaintiff's "employment by or duties on behalf of" the city of Harper Woods on that day or any other. On the date of Romain's disappearance and from that time forward, until plaintiff's retirement, plaintiff was assigned to COMET, a Macomb County narcotics investigation team, and worked out of an office in Clinton Township. On that particular date, plaintiff was on assignment in the city of Warren. Romain's disappearance and death allegedly occurred in the city of Grosse Pointe Woods, and the resultant investigation was undertaken by the cities of Grosse Pointe Woods and nearby Grosse Pointe Farms. Plaintiff has set forth no evidence to suggest that he was asked, by his employer or anyone else, to assist in the investigation of Romain's death. Based on the unrebutted affidavit of Randolph Skotarczyk, city manager for the city of Harper Wood, plaintiff's duties on behalf of COMET did not include investigating Romain's disappearance or death, events which occurred outside the parameters of COMET, outside the jurisdiction of COMET, within another county, and within the jurisdiction of another police department. The fact that plaintiff was "on duty" in another jurisdiction on the date of Romain's disappearance is therefore irrelevant. Additionally, plaintiff has not alleged that he was "on duty" during any alleged participation in the ongoing investigation. It is telling that the city of Harper Woods is not a named defendant in the federal lawsuit. Had any alleged participation in Romain's death been authorized by or undertaken on behalf of the city of Harper Woods, the city would be also open to liability.

Plaintiff also argues that based on defendant's agreement to defend a number of other police officers under identical policies and for what plaintiff suggests are identical claims raised in the federal complaint, defendant is estopped from denying plaintiff a defense. However, we find no merit in plaintiff's argument. Neither the doctrine of collateral estoppel, which

"precludes relitigation of an issue in a subsequent, different cause of action between the same parties," *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014) (citations omitted), or the doctrine of equitable estoppel, which provides "an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract," *Morales v Auto-Owners Ins Co*, 458 Mich 288, 295; 582 NW2d 776 (1998), supports plaintiff's argument here. It is irrelevant that defendant has agreed to defend police officers employed by the cities of Grosse Pointe Woods and Grosse Pointe Farms under separate liability policies held by those municipalities. Plaintiff seeks defense coverage under a policy held by the city of Harper Woods, and it is his coverage under that particular policy that we consider here. Moreover, the federal complaint alleges misconduct arising from the investigation of Romain's death, an activity in which the officers in Grosse Pointe Woods and Grosse Pointe Farms were involved in their official capacity. This fact supports a determination that the alleged misconduct of the other individually named police officers, at least arguably, occurred within the scope of their employment.

Finally, it is not dispositive, as plaintiff argues, that the federal complaint includes the general allegation: "All individually named Defendants, with the exceptions of John Doe and Killer John Doe, were acting within the scope of their employment, under their authority as law enforcement officers and under color of law at all times relevant to this Complaint." That plaintiff was acting within the scope of employment is a legal conclusion, not a fact, and we need not defer to it in determining a potential for liability coverage. "The duty to defend and indemnify is not based solely on the terminology used in the pleadings in the underlying action." *Fitch v State Farm Fire and Cas Co*, 211 Mich App 468, 471; 536 NW2d 273 (1995). "The court must also focus on the cause of the injury to determine whether coverage exists." *Id*. And while the federal complaint labels its counts "as to all defendants," this Court "is not bound by a party's choice of labels." *Attorney General v Merck Sharp & Dohme Corp*, 292 Mich App 1, 9; 807 NW2d 343 (2011). "[T]he gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).

Reading the federal complaint as a whole, it is clear that the allegations against plaintiff are very different from the allegations raised against the individually named police officers. Specifically, the federal complaint alleges that plaintiff (1) threatened Romain's life shortly before her disappearance, (2) was one of two men observed in the church parking lot by a witness near the time of Romain's disappearance, (3) was the last known person to be seen with Romain on the night of her disappearance, (4) provided a false, anonymous tip to the police regarding Romain's mental instability, and (5) should have been a "person of interest" in the investigation of Romain's disappearance and death. The federal complaint also alleges that willful, reckless or malicious acts of "at least some of the Defendants," including plaintiff, directly caused Romain's death. Plaintiff does not suggest that any of these specific allegations relate to activities falling within the scope of his employment. None of these activities are the kind plaintiff is employed to perform on behalf of the city of Harper Woods, nor could they arguably be attributed to any purpose to serve the city of Harper Woods. Intentional and reckless acts outside the scope of an employer's business do not fall within the scope of employment. See *Rogers*, 466 Mich at 651.

Although allegations of civil rights violations under § 1983 and § 1985 are described in the federal complaint as applicable to all "individually named plaintiffs," it is clear that these violations arise from conduct that, if engaged in by plaintiff, was outside the scope of plaintiff's employment. These claims allege a conspiracy by law enforcement officers involved in the investigation of Romain's death to cover up her murder by (1) failing to obtain DNA and fingerprint evidence, (2) falsifying police reports, (3) failing to investigate witnesses or take witness statements, (4) intentionally covering up or "losing" evidence that would incriminate the killer "or [plaintiff]," and (5) promising Romain's killer that they would "cover up her murder and rule it as a suicide." Notably, allegations of conspiracy to support civil rights violations in the federal complaint include the failure of the municipalities and individually named police officers to investigate plaintiff. This accusation in particular demonstrates the distinction between plaintiff's alleged participation in the cover-up conspiracy and the participation, through the course of their employment, of the other individually named police officers. The city of Harper Woods was not involved in the investigation of Romain's disappearance and death, which was conducted by the cities of Grosse Pointe Farms and Grosse Pointe Woods. Plaintiff's supervisor in the city of Harper Woods confirmed that plaintiff had no authority to aid in the investigation on behalf of COMET or the city of Harper Woods. Any involvement in the investigation would therefore have been outside the temporal and spatial limits of his employment, and intended solely for plaintiff's individual interest, rather than the interest of his employer.

The alleged misconduct was not "arguably" within the scope of plaintiff's employment, and there is therefore no doubt to resolve in plaintiff's favor. Because none of the theories of liability asserted against plaintiff are covered under the policy, defendant has no duty under the Policy to provide a defense for plaintiff in the federal lawsuit. See *Detroit Edison Co*, 102 Mich App at 142. Accordingly, the trial court erred when it granted partial summary disposition in favor of plaintiff and entered a declaratory judgment obligating defendant to provide plaintiff with a defense in the federal action.

Reversed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens