**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

FILED APRIL 25, 2007

CITIZENS INSURANCE COMPANY,

      Plaintiff/Counter-Defendant-Appellant,

v                                             No. 130099

PRO-SEAL SERVICE GROUP, INC, d/b/a
PRO-SEAL, INC,

      Defendant/Counter-Plaintiff-Appellee,

and

SETH SHORT, RANDY QUINCY,
FLOWSERVE CORPORATION, and
FLOWSERVE MANAGEMENT COMPANY,
      Defendants.
_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue in this insurance coverage dispute is whether defendant Pro-Seal

Service Group, Inc.'s, act of shipping a product in a competitor's packaging with

Pro-Seal's labeling affixed to it constitutes an "advertisement" for purposes of an

insurance policy. The Court of Appeals determined that plaintiff (Citizens

Insurance Company) was required to defend defendant under the terms of a

commercial general liability policy (CGL policy) because the underlying complaint alleged a violation of trade dress[1] and such a violation inherently involves advertising activity. Because we conclude that the act of shipping a product in a competitor's packaging with one's own name affixed to it is insufficient to satisfy the CGL policy's definition of an "advertisement," we reverse the judgment of the Court of Appeals that held to the contrary and remand this case to the trial court for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Pro-Seal Service Group, Inc., is a Michigan corporation that sells and repairs mechanical seals used in oil production facilities in Alaska. Pro-Seal has a CGL policy and an umbrella insurance policy with plaintiff Citizens Insurance. Pro-Seal's major competitor for mechanical seal sales in the Alaskan market is defendant Flowserve Corporation, a New York corporation that manufactures, sells, and refurbishes mechanical seals. The dispute between Flowserve and Pro-Seal began in June 2003, when a Flowserve employee discovered that two Flowserve mechanical seals that had been repaired by Pro-

---

[1] "The trade dress of a product is essentially its total image and overall appearance. It involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc v Taco Cabana, Inc*, 505 US 763, 764 n1; 112 S Ct 2753; 120 L Ed 2d 615 (1992) (internal quotation marks and citations omitted).

2

Seal were being shipped to a customer in the original Flowserve container, with the name "Pro-Seal" affixed to the outside of the container. Flowserve brought a suit against Pro-Seal in the United States District Court for the District of Alaska, claiming that Pro-Seal created confusion in the marketplace by imitating or infringing trademarks or product marks, and by using trade secrets, blueprints, engineering drawings, packaging materials, and sales practices that misrepresented Pro-Seal seals as being Flowserve seals.[2] Pro-Seal requested that plaintiff defend it in the Flowserve action pursuant to both insurance policies. Plaintiff concluded that the nature of the allegations in the Flowserve complaint were beyond the scope of either policy and, therefore, refused to defend Pro-Seal. Plaintiff filed the instant action seeking a declaration that plaintiff was not required to defend Pro-Seal under either policy.

The trial court granted plaintiff's motion for summary disposition, introducing its analysis by noting that if a contract is plain and unambiguous, it must be enforced according to its terms. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). According to the terms of the instant insurance contract, coverage is excluded for advertising injuries that are "knowingly made." The trial court concluded that coverage did not exist for the conduct asserted in the

---

[2] After a facilitation session, the Flowserve complaint was dismissed by stipulation. Defendant admitted two inadvertent trademark infringements and settled the case for $1,800.

Flowserve lawsuit because it "alleges an intentional course of conduct involving fraud, deceit, and counterfeit parts being sold as genuine."

On appeal, the Court of Appeals vacated the judgment of the trial court in a published opinion, holding that plaintiff was required to represent defendant Pro-Seal because Flowserve's allegations fell within the definition of an "advertising injury" under the CGL policy. 268 Mich App 542; 710 NW2d 547 (2005). The Court of Appeals undertook its analysis by noting that the protection of trade dress is intended to """"secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."""" *Id.* at 550-551, quoting *Two Pesos, supra* at 774, quoting *Park 'N Fly, Inc v Dollar Park & Fly, Inc*, 469 US 189, 198; 105 S Ct 658; 83 L Ed 2d 582 (1985). Because the underlying complaint alleged that Pro-Seal's conduct confused and misled customers into believing that Pro-Seal seals were Flowserve seals, the ability of customers to "distinguish between competing producers" was implicated. On that basis, the Court of Appeals held that Flowserve's complaint alleged a trade dress infringement. The Court of Appeals also held that the alleged trade dress infringement occurred in an "advertisement" because "'allegations of trademark and trade dress infringement inherently involve advertising activity. In other words, there can be no trademark/trade dress infringement without advertising having occurred.'" *Id.* at 551-552, quoting *Poof Toy Products, Inc v United States Fidelity & Guaranty Co*, 891 F Supp 1228, 1235-1236 (ED Mich, 1995).

4

Leave to appeal was sought in this Court and, after directing the parties to address certain issues,[3] we heard oral argument on whether to grant the plaintiff's application for leave to appeal or take other peremptory action permitted by MCR 7.302(G)(1). 474 Mich 1112 (2006).

## II. STANDARD OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). This case requires that we consider whether defendant's alleged conduct took place in an "advertisement" as that term in defined in the insurance policy. The construction and interpretation of the language in an insurance contract is a question of law that this Court reviews de novo. *Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 463; 663 NW2d 447 (2003).

## III. ANALYSIS

The terms of the CGL policy provide that plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The CGL policy defines a "personal and advertising injury" as follows:

---

[3] These issues were as follows: "(1) whether Flowserve's complaint alleged an advertising injury within the meaning of the commercial general liability policy that Citizens Insurance Company issued to Pro-Seal, Inc., and (2) if so, whether Citizens was relieved of its duty to defend Pro-Seal by operation of the policy exclusion for actions taken with knowledge that an advertising injury would result."

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

* * *

(f)     The use of another's advertising idea in your "advertisement"; or

(g)  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

The umbrella policy defines an "advertising injury" as follows:

A.  Advertising Injury means injury caused by one or more of the following offenses committed during the policy period in the course of advertising your goods, products or services:

1.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

2.  Oral or written publication of material that violates a person's right or [sic] privacy.

3.  Misappropriation of advertising ideas or style of doing business; or

4.  Infringement of copyright, title or slogan.

The term "advertisement" is defined in the CGL policy as[4]

---

[4] The umbrella policy does not define the word "advertising." However, the umbrella insurance policy does state:

The definitions, terms, conditions and exclusions of underlying insurance in effect at the inception of this policy apply to [the umbrella] coverage unless:

A.  They conflict with any of the provisions of this policy; or

(continued…)

a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

"[I]n reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353-354; 596 NW2d 190 (1999). In *Henderson*, this Court described those principles as follows:

> First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.

> While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefiting an insured. The fact that a policy does not define a relevant term does not render the policy ambiguous. Rather, reviewing courts must interpret the terms of the contract in accordance with their

(…continued)
> B. There is a provision in this policy for which a similar provision is not contained in underlying insurance.

As it relates to an "advertising injury," there is no conflict between the terms of the CGL policy and the umbrella policy. Furthermore, the "advertising injury" section of the umbrella policy is substantially similar to the "advertising injury" provisions in the CGL policy. The dictionary defines the term "advertising" as "paid announcements; advertisements." *Random House Webster's College Dictionary* (1997) at 20. Therefore, pursuant to the terms of the umbrella policy, the definition of the term "advertisement" in the CGL policy applies to the umbrella policy as well.

7

commonly used meanings. Indeed, we do not ascribe ambiguity to words simply because dictionary publishers are obliged to define words differently to avoid possible plagiarism. [*Id.* at 354 (citations omitted).]

The Court of Appeals erred in this case by failing to enforce the terms of the CGL policy as written.[5] While the Court of Appeals noted that the CGL policy defined the term "advertisement," it ultimately rejected that definition in favor of a different definition articulated by the United States District Court in *Poof Toy, supra* at 1235-1236. In *Poof Toy*, the United States District Court held that

allegations of trademark and trade dress infringement inherently involve advertising activity. In other words, there can be no trademark/trade dress infringement without advertising having occurred. This conclusion results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. See 15 U.S.C. § 1125(a). To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress.

However, the Court of Appeals failed to recognize that *Poof Toys* is readily distinguishable because the insurance contract at issue in that case did not define the term "advertisement." Because the term was left undefined, the United States

---

[5] Justice Cavanagh argues that Flowserve alleged in its complaint that Pro-Seal used the Flowserve trademark to identify its products as Flowserve products and, on that basis, "it can be deduced that Pro-Seal was accused of taking actions that inherently involved notice broadcast or published to the general public or specific market segments about its goods, products, or services for the purpose of attracting customers or supporters." *Post* at 4. However, the only portion of the Flowserve complaint relied upon by the Court of Appeals in this case is the allegation that Pro-Seal "shipped the counterfeit [seals] to the customer in a shipping crate prominently labeled with the Flowserve label." Flowserve complaint at paragraph 22. We should not resolve this case on the basis of allegations that were not addressed by the Court of Appeals.

8

District Court consulted a dictionary to define the term and concluded on the basis of that definition that there was coverage under that policy. Because the term "advertisement" is defined in the instant CGL policy, and that definition is incorporated into the umbrella policy as well, the Court of Appeals' reliance on *Poof Toy* was inappropriate inasmuch as it potentially subjects plaintiff to a risk that it did not assume. See, e.g., *Westfield Companies v OKL CAN Line*, 155 Ohio App 3d 747, 755; 804 NE2d 45 (2003) (holding that *Poof Toy* did not apply to an insurance policy that specifically defined the term "advertisement").

Thus, in order to determine whether plaintiff had a duty to defend in this case, we must ascertain whether defendant's conduct falls within the scope of the term "advertisement" as written in the CGL policy. This Court interprets the words used in a contract "in accordance with their commonly used meanings." *Henderson, supra* at 354. Further, when defining a phrase used in a contract, this Court "read[s] the phrase as a whole, giving the phrase its commonly used meaning." *Id.* at 356. Under the instant policy, an "advertisement" takes place when there is: (1) a notice; (2) that is broadcast or published; (3) to the general public or specific market segments; (4) about [the company's] goods, products, or services; and (5) for the purpose of attracting customers. "When considering a word or phrase that has not been given prior legal meaning, resort to a lay dictionary such as *Webster's* is appropriate." *Greene v A P Products, Ltd*, 475 Mich 502, 510; 717 NW2d 855 (2006). The dictionary defines "notice," in relevant part, as "a written or printed statement conveying . . . information . . . ."

9

*Random House Webster's College Dictionary* (1997) at 895. The dictionary defines "broadcast," in relevant part, as "to speak, perform, or present on a radio or television program" or "to spread widely; disseminate." *Id.* at 166. "Publish" is defined, in relevant part, as "to announce formally or officially; proclaim; promulgate" or "to make publicly or generally known." *Id.* at 1054. These definitions are consistent with the common understanding of the term "broadcast or publish" in the advertising realm as the public dissemination of information intended to inform potential customers of a company's availability to do business. Thus, for example, a business such as Pro-Seal may utilize television, radio, newspapers, or billboards in order to inform potential customers about the goods and services they provide and to attract the patronage of such customers.

The Court of Appeals concluded that when defendant shipped one of its seals to a customer in a Flowserve container, that was an act that "constitute[ed] notice that is published to the specific market segment in which Pro-Seal and Flowserve compete about the seals for the purpose of attracting customers or supporters." 268 Mich App at 552. Pro-Seal seizes on this argument, claiming that when it shipped the seal at issue to a distribution center to be forwarded to its customer, it could be observed by members of the general public visiting that distribution center. Therefore, according to defendant, the use of the Flowserve packaging constituted an "advertisement."

However, both the Court of Appeals and defendant overlook that, under the terms of the CGL policy, defendant must publicly disseminate information about

10

its goods and services for the purpose of attracting the patronage of potential customers. Here, defendant sent a seal to a *specific* customer in a Flowserve container for the purpose of completing a single transaction. At best, Pro-Seal's argument that it expected that other customers might view the package at the distribution center and, as a result, would be encouraged in doing business with defendant was an incidental and remote benefit that does not fundamentally alter the fact that this was a single transaction with a specific customer. We conclude that the purpose for placing a Pro-Seal label on the Flowserve container in this instance was to identify for *that specific customer* the source of the seal to allow that specific customer to contact defendant with any questions or complaints about that product.[6] Accordingly, we conclude that the harm alleged to have been

---

[6] We do not, as Justice Kelly asserts, hold that a company must engage in "wide-scale dissemination of information, such as by television or radio, for there to be an advertisement." *Post* at 10. In fact, we agree with Justice Kelly that, in a limited market such as the Alaskan oil market, a notice broadcast to even a single customer might constitute "advertising," as long as that notice was designed to "attract[] customers or supporters." However, Justice Kelly overlooks the fact that the conduct complained of in this case, namely Pro-Seal's act of shipping the seal in question to its customer in the original Flowserve container affixed with a Pro-Seal label, was not undertaken to "attract[] customers or supporters." Rather, Pro-Seal shipped the seal in question in order to complete an already agreed-upon transaction. In other words, Pro-Seal had already "attracted" its customer by the time the seal in question was shipped in the container provided to Pro-Seal by that customer. While the complaint alleges that customer was confused about the origin of the seal at issue in this appeal, there is nothing in the complaint that could reasonably be construed as an allegation that the Pro-Seal labeling was designed to "attract" that customer to purchase *another* seal from Pro-Seal. Rather, looking at the context of the transaction, the Pro-Seal labeling simply served to identify the source of the repaired seal and to provide contact information if the customer had any questions or concerns. Likewise, contrary to

(continued…)

caused by Pro-Seal's act of shipping a seal in a Flowserve container did not "arise out of an advertisement" and, therefore, plaintiff was not obligated to tender a defense based on this allegation under the terms of the CGL policy.[7]

## IV. CONCLUSION

In order to constitute an advertisement under the CGL policy, defendant must publicly disseminate information about its goods and services for the purpose of attracting the patronage of potential customers. We conclude that when defendant shipped the seal in question to its customer in a Flowserve container affixed with a Pro-Seal label, there was no "advertising injury" under the CGL policy. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.[8]

---

(…continued)
Justice Kelly's contention, nothing in the Flowserve complaint alleged that Pro-Seal utilized the container in question in order to "attract[] customers or supporters." Rather, Flowserve alleged that the shipping container was used as part of an attempt by Pro-Seal to lead customers to believe that its seals were actually Flowserve seals. Accordingly, Pro-Seal's act of shipping a seal to its customer in the original Flowserve container is simply not an "advertisement" as the term is defined by the policy.

[7] Because we conclude that no advertising occurred, we find it unnecessary to decide whether the underlying complaint alleged a "trade dress" or "trademark" violation, or whether Citizens Insurance was relieved of its duty to defend Pro-Seal by operation of the policy exclusion for actions taken with knowledge that an advertising injury would result.

[8] Justice Cavanagh argues that a remand to the trial court is inappropriate because when the trial court held that the policy did not apply to advertising
(continued…)

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

---

(…continued)

injuries that are knowingly made, "it is clear that it found [an advertising injury] because it determined that the advertising injury was made knowingly." *Post* at 4. We disagree.  In granting summary disposition to plaintiff, the trial court concluded that the Flowserve complaint "alleges an intentional course of conduct involving fraud, deceit, and counterfeit parts being sold as genuine.  Clearly, this conduct does not fall within the scope of the limited coverage for advertising injury provided by the policy."  Because the trial court relied wholly on the intentional nature of Pro-Seal's conduct, it did not address whether the Flowserve complaint actually set forth an "advertising injury" as defined by the policy. Because the trial court never addressed the issue left unresolved in this opinion, it should do so on remand.

13

STATE OF MICHIGAN

SUPREME COURT

CITIZENS INSURANCE COMPANY,

       Plaintiff/Counter-Defendant-
       Appellant,

v                                              No.  130099

PRO-SEAL SERVICE GROUP INC., doing
business as PRO-SEAL INC.,

       Defendant/Counter-
       Plaintiff-Appellee,

and

SETH SHORT, RANDY QUINCY,
FLOWSERVE CORPORATION, and
FLOWSERVE MANAGEMENT
COMPANY,

       Defendants.

_____

CAVANAGH, J. (*dissenting*).

      I agree with dissenting Justice Kelly that in the underlying complaint in this action, Flowserve's allegations amounted to allegations of a violation of its trade dress. I also agree with her analysis of the terms "advertisement" and "notice." However, I would resolve this case simply by reviewing the specific allegations Flowserve made in its complaint against Pro-Seal Service Group, Inc., because as Justice Kelly notes, and as the majority ignores, the question whether

an insurer has the duty to defend must be answered by examining the allegations in the underlying complaint, rather than by looking at the insured's specific actions. In fact, "[i]f the allegations of a third party against the policyholder even arguably come within the policy coverage, the insurer must provide a defense." *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450-451; 550 NW2d 475 (1996), citing *Polkow v Citizens Ins Co*, 438 Mich 174, 178, 180; 476 NW2d 382 (1991); *Allstate Ins Co v Freeman*, 432 Mich 656, 662; 443 NW2d 734 (1989). "This is true even where the claim may be groundless or frivolous." *Id.*

Here, Flowserve accused Pro-Seal's individual employees of misrepresenting to the public that they were associated with Flowserve, that they were capable of performing certified repairs on Flowserve products, and that Pro-Seal seals were Flowserve seals. Flowserve further alleged that defendant "improperly appropriated and used Flowserve's "P-50" trademark to identify their inferior seal" to "capitalize on Flowserve's goodwill and to further confuse the process industry into believing that [Pro-Seal's] competitive seals are Flowserve seals." Further, Flowserve accused Pro-Seal of using three of Flowserve's trademarks and attached several purchase orders allegedly showing that customers were ordering Flowserve seals from Pro-Seal and were being sent Pro-Seal seals. Flowserve attached a photograph of a Flowserve product bearing Flowserve trademarks and alleged that Pro-Seal had replaced internal parts with Pro-Seal parts. Flowserve explained that it discovered these internal parts while

2

fixing a pump in which the seal had been installed and that it also discovered another seal it accused Pro-Seal of altering before it was installed. Another allegation involved an allegedly improperly labeled crate, which contained another allegedly altered Flowserve product, and an assembly drawing bearing the Flowserve name and trademark in the box in which the seal was shipped.

Specific guiding principles governing the determination of an insurer's duty to defend were aptly set forth in *American Bumper*, *supra*, and bear repeating here:

> "'An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co*, 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co*, 73 Mich App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor 14 Couch, Insurance, 2d (rev ed), § 51:45, p 538 (now § 51:49, p 489).'" [*American Bumper*, *supra* at 451-452, quoting *Protective Nat'l Ins Co v City of Woodhaven*, 438 Mich 154, 159; 476 NW2d 374 (1991), quoting *Detroit Edison Co v Michigan Mut Ins Co*, 102 Mich App 136, 142; 301 NW2d 832 (1980).]

While the complaint in the present case certainly could have been crafted more specifically with respect to describing precisely how defendant accomplished these violations, i.e., how it "advertised," Flowserve's allegations were sufficient to trigger a duty to defend. Flowserve alleged that Pro-Seal used Flowserve's trademarks to identify Pro-Seal products and through its actions

3

caused customer confusion regarding the origin or manufacturer of the goods. From these allegations alone, it can be deduced that Pro-Seal was accused of taking actions that inherently involved notice broadcast or published to the general public or specific market segments about its goods, products, or services for the purpose of attracting customers or supporters. Thus, the Court of Appeals correctly determined that plaintiff had a duty to defend Pro-Seal.

On that basis, I would affirm the Court of Appeals. But even if I agreed with the majority's substantive analysis, I would not remand this case to the trial court to allow it to determine anew whether plaintiff was required to defend Pro-Seal. The trial court was presented with this and other issues in the proceedings on this declaratory judgment action, and it made its ruling accordingly. In its written opinion and order granting summary disposition for plaintiff, the trial court described the nature of the claims being made, summarized the various complaint allegations, and ruled that plaintiff had no duty to defend. In fact, it ruled that "coverage is excluded for advertising injuries that are 'knowingly made.'" See *ante* at 3. While the trial court did not provide a detailed analysis with regard to the alleged "advertising injury," it is clear that it found one because it determined that the advertising injury was made knowingly. And it did not use conditional language, such as stating that if there were an advertising injury, it was knowingly made. Presumably, the trial court is unlikely to change its mind on remand, making the preliminary "victory" in this case hollow for

4

defendant. Quite simply, the majority's remand unfairly gives plaintiff a second
opportunity to convince the trial court to again rule in its favor.

                                        Michael F. Cavanagh
                                        Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

CITIZENS INSURANCE COMPANY,

       Plaintiff/Counter-Defendant-
       Appellant,

v                                           No. 130099

PRO-SEAL SERVICE GROUP, INC., doing
business as PRO-SEAL, INC.,

       Defendant/Counter-
       Plaintiff-Appellee.

and

SETH SHORT, RANDY QUINCY,
FLOWSERVE CORPORATION, and
FLOWSERVE MANAGEMENT
COMPANY,

       Defendants.

_____

KELLY, J. (*dissenting*).

      The majority has decided that plaintiff Citizens Insurance Company had no

duty to defend defendant Pro-Seal Service Group, Inc., in the underlying

trademark infringement action. It asserts that the complaint did not allege an

advertising injury as that term is defined by the parties' commercial general

liability policy (CGL policy). I believe that the complaint alleges one of the

advertising injury offenses covered by the policy and the injury complained of

does not fall within an enumerated exception to coverage. As a consequence, I respectfully dissent. I would affirm the judgment of the Court of Appeals.

THE UNDERLYING FACTS

Defendant Pro-Seal is in the business of selling and repairing mechanical seals used in high-temperature and extreme-pressure environments. It is not a manufacturer of these seals but a distributor that sells mechanical seal products manufactured by others and performs repairs on seals, using its own employees.

In the underlying action, a customer of Pro-Seal requested that Pro-Seal make repairs and modifications to mechanical seals that the customer had purchased from defendants Flowserve Corporation and Flowserve Management Company (Flowserve). Flowserve is a large manufacturer of mechanical seals that also operates a repair business for its seals. Flowserve and Pro-Seal are competitors in the Alaskan market in both the sale of new seals and in the repair of worn seals.

Pro-Seal repaired two Flowserve mechanical seals and shipped them to Alaska Roteq Corporation, an Alaskan distribution center engaged in the distribution and sale of mechanical seals, for delivery to Pro-Seal's client. The seals were shipped in a distinctive Flowserve reusable container. Pro-Seal's name appeared on the outside with a prominent red label that displayed the location of and contact information for Pro-Seal, a product description, and testing information. The exterior packaging also displayed the Flowserve trademark.

2

An employee of Flowserve observed the packaging while it sat in the open on the premises of Roteq. The Flowserve employee knew that the product inside had been repaired by Pro-Seal because the affixed label displayed Pro-Seal's name. Flowserve intercepted the repaired seal and the box in which it was contained.

Four months after the incident, Flowserve filed a complaint against Pro-Seal in the United States District Court in Alaska. It alleged, among other things, that Pro-Seal created confusion in the marketplace by (1) imitating or infringing trademarks and product marks, (2) by using trade secrets, blueprints, engineering drawings, and packaging materials, and (3) by engaging in sales-related conduct, all of which misrepresented Pro-Seal's products as being Flowserve products in violation of Flowserve product trademarks, trade names, and the Lanham Act. 15 USC 1125(a). The complaint asserted that Pro-Seal unfairly competed with Flowserve through these devices and misrepresented to particular customers and the public that Pro-Seal's products and services were Flowserve products and services.

Pro-Seal notified its insurer, Citizens Insurance Company, of the lawsuit and requested that it provide a defense. Citizens Insurance declined and filed this lawsuit seeking a declaration that it had neither a duty to defend nor an obligation to indemnify. Both parties moved for summary disposition. The trial court went directly to an exclusion in the CGL policy. It pertains to injuries caused by acts of the insured done with knowledge that an injury to another will occur. It decided

3

that the exclusion applied and, as a result, that Citizens Insurance had no duty to defend.

Pro-Seal appealed to the Court of Appeals, which, in a published opinion, vacated the trial court's order. The appellate court determined that the advertising injury coverage under the CGL policy required Citizens Insurance to defend the underlying action. It reasoned that the substance of the complaint relied on the doctrine of "trade dress," a theory on which recovery could be based. The claimed injury, the appeals court held, arguably fell within the definition of an advertising injury. It ruled that the CGL policy exclusion did not apply because the complaint alleged both intentional and nonintentional acts. Flowserve, it held, could have recovered without proving that any relevant act was committed intentionally.

STANDARD OF REVIEW

This Court reviews de novo the interpretation given to language in an insurance contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). An insurance company's duty to defend its insured depends on the allegations the third party makes in the underlying complaint against the insured. *Illinois Employers Ins of Wausau v Dragovich*, 139 Mich App 502, 506; 362 NW2d 767 (1984). If the allegations fall even arguably within the coverage of the policy, the insurer has a duty to defend. *American Bumper & Mfg Co v Hartford Fire Ins Co,* 452 Mich 440, 450-451; 550 NW2d 475 (1996). Where there is doubt about whether the complaint alleges a liability of the insurer

4

under the policy, the doubt must be resolved in favor of the insured. *Polkow v Citizens Ins Co*, 438 Mich 174, 180; 476 NW2d 382 (1991).

ADVERTISING INJURY

The issue in this case is whether Citizens Insurance had a duty to defend under the CGL policy. In resolving this issue, the Court must construe the terms of the policy. A court will not hold an insurance company liable for a risk that it did not assume. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

The policy provides in section 1(a) that Citizens Insurance "will pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury." In relevant part, "advertising injury" is defined in Section V, paragraph 14:

> "Personal and advertising injury" means injury, . . . arising out of one or more of the following offenses:

* * *

> (g) Infringing upon another's copyright, trade dress, or slogan in your "advertisement."

In order to qualify as an advertising injury under this subsection, two requirements must be satisfied: Pro-Seal must have infringed Flowserve's copyright, trade dress, or slogan, and the infringement must have occurred in Pro-Seal's "advertisement."

Flowserve alleged that Pro-Seal used Flowserve's trademark and represented Flowserve products to be its own, and sent a seal that it had repaired to

5

a customer in distinctive Flowserve packaging. The "trade dress" of a product refers to the product's overall image and may include features such as a particular sales technique. *Two Pesos, Inc v Taco Cabana, Inc*, 505 US 763, 764; 112 S Ct 2753; 120 L Ed 2d 615 (1992). It is a broad term that is expansive enough to include Flowserve's allegations, even though Flowserve never used the term "trade dress." Thus, considering the substance of the claim, contrasted with the language of the complaint, as this Court must do, the complaint alleged that Pro-Seal infringed Flowserve's trade dress. See *American Bumper*, 452 Mich 451-452.

The injury must also arise out of an "advertisement" in order to qualify as an advertising injury. As defined by the CGL policy, an "advertisement" takes place when the following four elements are satisfied: (1) a notice about the company's goods, products, or services, (2) is broadcast or published, (3) to the general public or specific market segments, (4) for the purpose of attracting customers.[1]

The first requirement is that there be notice about the company's goods, products or services. The majority opinion defines "notice" as including "'a written or printed statement conveying . . . information.'" *Ante* at 9 (citation omitted.) In this case, Pro-Seal shipped a package containing a label displaying its

---

[1] "Advertisement" is defined in the CGL policy as "[n]otice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

6

name as well as product information. This satisfied the notice requirement under the majority's definition.

The next inquiry concerns whether the notice was broadcast or published. As defined by the majority, "publish" is "'to make publicly . . . known.'" *Ante* at 10 (citation omitted). The act of providing a member of the public with information, without more, makes the information public. Since Pro-Seal placed the label on a package, then sent that package to a customer, there was publication.

The next requirement is that the notice be conveyed to the general public or to specific market segments. There is no definition in the CGL policy of "specific market segments." However, given that "segment" is a synonym for "piece" or "section," it can be presumed that "market segments" refers to particular customers or vendors in the marketplace. *Rogets II: The New Thesaurus* (3d ed).

Here, as the parties agree, the geographic area where Pro-Seal and Flowserve competed, the North Slope of Alaska, contains few customers. Because the market is so restricted, communication with one customer or vendor would be communication with a market segment. Accordingly, I conclude that, the sending of the package to Roteq for delivery to a specific customer constituted giving notice to a specific market segment.

The final requirement is that the notice be for the purpose of attracting customers. Flowserve's complaint alleges that Pro-Seal unfairly competed because its communications in the marketplace about its products and services caused Pro-Seal products and services to be confused with those of Flowserve. The essence

7

of Flowserve's claim is that, by shipping a seal in a Flowserve package with a label containing Pro-Seal's contact information, Pro-Seal unfairly sought to attract customers. This allegation satisfies the final requirement.

Since the allegation is that Pro-Seal infringed Flowserve's trade dress in Pro-Seal's "advertisement," I believe that the complaint asserted an advertising injury, as the policy defines that term.[2] Accordingly, Citizens Insurance had a duty to defend unless a specific policy exclusion excused it.

The majority disagrees and holds that Citizens Insurance had no duty to defend. It claims that the purpose of the notice must be to attract "potential" customers. *Ante* at 10. According to the majority, since the package was sent to a specific customer, the purpose of its label was to "allow that specific customer to contact defendant with any questions or complaints about the product," not to attract potential customers. *Ante* at 11.

The majority claims that I disregard the fact that the conduct complained of "was not undertaken to 'attract[] customers or supporters.'" *Ante* at 11 n 6. I disagree. Actually, it is the majority that errs by improperly ignoring the complaint in deciding that there is no duty to defend. See *Protective Nat'l Ins Co of Omaha v Woodhaven*, 438 Mich 154, 159; 476 NW2d 374 (1991).

---

[2] Subsection f provides another means by which there could be an advertising injury. That subsection indicates that there is an advertising injury when the injury arises out of "[t]he use of another's advertising idea in your 'advertisement.'" However, because coverage is available for an advertising injury as defined in subsection g, it is unnecessary to determine if an advertising injury was alleged as defined by subsection f.

8

A closer look illustrates that the majority's decision is contrary to crucial allegations in the complaint. Paragraph 22 of the complaint alleges that Pro-Seal's actions have led to customer confusion and lists specific examples of such acts. Subpart e of that paragraph discusses the particular act at issue in this case. Paragraphs 34 through 37 assert the unfair competition claim. Paragraph 34 repeats and realleges the allegations of the prior 33 paragraphs. Paragraphs 35 through 37 contain the substance of the unfair competition claim, which is that Pro-Seal created confusion in the marketplace and this confusion caused Flowserve to lose business.

Though the complaint never explicitly states that the particular act at issue was done to "attract[] customers or supporters," the duty to defend cannot be limited by the precise language in the pleadings. *American Bumper*, 452 Mich 450-451. Rather, the insurer has a duty to look beyond the allegations to analyze whether coverage is required. *Id.* at 452 By asserting that the particular act at issue was done to cause confusion in the marketplace at Flowserve's expense, Flowserve alleged that the particular act was done to attract customers.

The majority appears to agree that the act at issue was done to cause confusion in the marketplace but still concludes that it was not performed to attract customers. This conclusion ignores reality. The only reason for Pro-Seal to cause confusion in the marketplace would be to draw customers to itself and away from Flowserve. Flowserve's complaint alleges as much by asserting that Flowserve has lost business as a result of this confusion. The majority errs by failing to look

9

beyond the precise language used in the pleading to determine whether there is a duty to defend

The majority also errs by relying on the fact that the container was sent to an existing customer in order to conclude that the notice was not sent to attract customers. This fact is irrelevant. The policy says nothing about "potential" customers. As long as the complaint alleges that the notice was meant to attract customers, be they existing or potential, the requirement is satisfied. Here, the complaint alleges that the container was sent to an existing customer. It further alleges that this act was done to cause confusion. Flowserve claims that this marketplace confusion made it lose business. We should consider the substance of this claim: Flowserve accused Pro-Seal of confusing this customer so that in the future the customer would conduct business with Pro-Seal under the mistaken belief that he was conducting business with Flowserve. By making this allegation, Flowserve clearly accused Pro-Seal of acting with the intent to attract future business from this particular customer.

By deciding as it does, the majority would seem to require wide-scale dissemination of information, such as by television or radio, for there to be an advertisement. I believe that it is error to impose such a requirement. There is nothing in the policy that precludes a finding that giving notice to a specific customer can qualify as an advertisement.[3] If the notice is published to the general

---

[3] The policy does require that the notice be sent to the general public or specific market segments. However, this language does not preclude situations,

(continued…)

public or to a specific market segment for the purpose of attracting customers, there is no requirement that it be widely disseminated. Rather, any such requirement is one of this Court's own making.

It is improper to read a nonexistent limitation on coverage into an insurance policy. This is especially true where, as here, the party benefiting from the limitation drafted the policy. If Citizens Insurance had intended to require dissemination through the public airwaves or communication with a large number of people, it easily could have imposed such a requirement. It did not do so. It is the insurance company's obligation to define the coverage to be provided. The courts should not save an insurance company from the plain meaning of terms that it used in its policy or artificially limit the scope of coverage, as the majority does here.

EXCLUSIONS

As discussed above, I believe that the complaint alleged an advertising injury as that term is defined by the policy. Accordingly, Citizens Insurance has a duty to defend Pro-Seal unless a specific exclusion excuses it from this duty. See *Protective Nat'l Ins Co*, 438 Mich at 159.

The CGL policy's "personal and advertising injury" coverage is subject to the following exclusion:

_____

(…continued)
like this one, where the market is so restricted that one customer would constitute a specific market segment.

2. Exclusions

This insurance does not apply to:

(a) "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury[.]"

By requiring knowledge that the acts would violate the rights of another, this exclusion applies only to claims of intentional wrongdoing. Here, several of the allegations in Flowserve's complaint contain no reference to intent and seek recovery for conduct that was innocent, inadvertent, negligent, or reckless. As a result, even though Citizens Insurance correctly points out that the complaint also alleged intentional wrongdoing, the exclusion does not excuse it from its duty to defend Pro-Seal. An insurer must defend its insured even if theories of liability asserted are not covered under the policy, if any asserted theories of recovery fall within the policy coverage. *American Bumper & Mfg Co*, 452 Mich at 451.

CONCLUSION

Since the complaint alleged that Pro-Seal infringed Flowserve's trade dress in its "advertisement," and no specific policy exclusion excused Citizens Insurance from its duty to defend, I must dissent. I would affirm the judgment of the Court of Appeals.

Marilyn Kelly
Elizabeth A. Weaver

12